2022-1462

---

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

TONIA TIPPINS, DERRIK MAGNUSON, GEORGE HOLLOWAY, JENNIFER REHBERG, GLENDA SMITHLEETH, M. ALLEN BUMGARDNER, For Themselves and as Representatives of a Class of Similarly Situated Persons,
Plaintiffs-Appellees,

v.

UNITED STATES,
Defendant-Appellant.

---

Appeal from the United States Court of Federal Claims
in Case No. 1:18-CV-00923, Judge David A. Tapp

---

# BRIEF FOR DEFENDANT-APPELLANT UNITED STATES

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-9303

Attorneys for Defendant-Appellant

Of Counsel:

CDR JARED H. HOOD
Deputy Chief
Office of Claims & Litigation
United States Coast Guard
2703 Martin Luther King Jr. Ave SE
Washington, D.C. 20593-7213

July 25, 2022

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ... iii

STATEMENT OF RELATED CASES ... viii

JURISDICTIONAL STATEMENT ... 1

STATEMENT OF THE ISSUE ... 1

STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS ... 1

I. Nature Of The Case ... 1

II. Statement Of Facts ... 3

III. The Course Of Proceedings And Disposition Below ... 7

SUMMARY OF THE ARGUMENT ... 10

ARGUMENT ... 11

I. Standard Of Review ... 11

II. The Trial Court Misconstrued The Plain Meaning Of "Reduction In Force" In Section 357(j) As Necessarily Requiring Elimination Of Military Jobs, When Dictionary Definitions And The Statutory Scheme Establish That A Reduction In Military Force Includes A Reduction In Military Personnel ... 11

A. Congress Broadly Authorized, But Did Not Define, Reductions In Force ... 12

B. Dictionary Definitions Demonstrate That The Plain Meaning Of "Reduction In Force" Includes Reductions Of Military Personnel ... 15

C. The Dictionary Definitions Are Consistent With The Statutory Scheme Where Enlisted Members Serve In Grades, Not Positions ... 18

D. Another Military Statute Reinforces The Plain Meaning Of Section 357(j) ... 19

**TABLE OF CONTENTS (continued)**

**Page:**

E. The Trial Court Erroneously Relied Upon Cases Regarding Reductions In Force Under Statutes and Regulations Addressing Civilian Employees ....................23

1. Statutes Governing Federal Civil Service Employees And Military Members Do Not Have a Similar Purpose ....................24

2. The Trial Court Misconstrued The Term "Reduction In Force" From The Civilian Sphere ....................28

a. Congress Has Used The Terms "Reduction In Force" And "Reduction In Personnel" Interchangeably In The Civilian Context ....................28

b. This Court Has Recognized That Congress Has Not Specified The Circumstances Under Which Reductions In Force May Be Appropriate In The Civilian Sphere ....................30

c. Reductions In Force Are Not Limited To Circumstances With An Elimination Of Jobs In The Civilian Context ....................31

d. The Trial Court Erroneously Relied Upon Precedents Concerning Reductions In Force Involving Civilian Employees ....................32

CONCLUSION ....................38

# TABLE OF AUTHORITIES

**Cases:** **Page(s):**


*Aectra Ref. & Mktg. v. United States*, 565 F.3d 1364 (Fed. Cir. 2009)....................22

*Allphin v. United States*, 758 F.3d 1336 (Fed. Cir. 2014) ................8, 13, 19, 25, 26

*Alvin v. United States*, 50 Fed. Cl. 295 (2001) ........................................................27

*Anderson v. United States*, 111 Fed. Cl. 572, 583 (2013) ................................ 26-27

*Azar v. Alina Health Servs.*, 139 S. Ct. 1804 (2019) ..............................................21

*Baker v. United States*, 34 Fed. Cl. 645 (1995) .......................................................27

*Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990) .....................................8, 36

*Bateson v. United States*, 48 Fed. Cl. 162 (2000) .......................................................8

*Berkley v. United States*, 287 F.3d 1076 (Fed. Cir. 2002) ................................ 25-26

*Berkley v. United States*, 59 Fed. Cl. 675 (2004)......................................................27

*Consol. Coal Co. v. United States*, 528 F.3d 1344 (Fed. Cir. 2008) .......................11

*Consol. Coal Co. v. United States*, 351 F.3d 1374 (Fed. Cir. 2003) .......................11

*Cornetta v. United States*, 851 F.2d 1372 (Fed. Cir. 1988)....................................24

*Cross v. Dep't of Transp.*, 127 F.3d 1443 (Fed. Cir. 1997)....................................30

*Crumley v. United States*, 133 Fed. Cl. 607 (2017) .................................................26

*Curry v. United States*, 609 F.2d 980 (Ct. Cl. 1979) ........................................26, 27

*Davidson v. United States*, 650 F.2d 285 (Ct. Cl. 1980) ..................................26, 27

*Doneghy v. United States*, 618 F.2d 121 (Ct. Cl. 1979) ..................................26, 27

*Erlenbaugh v. United States*, 409 U.S. 239 (1972) .................................................22

*Gandola v. F.T.C.*, 773 F.2d 308 (Fed. Cir. 1985) ..............................7-8, 32, 34-35

*Huber v. Merit Sys. Prot. Bd.*, 793 F.2d 284 (Fed. Cir. 1986)....................... 7, 31-35

**TABLE OF AUTHORITIES (continued)**

**Cases (continued):** **Page(s):**

*James v. Von Zemenszky*, 284 F.3d 1310 (Fed. Cir. 2002)........................... 7, 32-35

*Johnson v. Alexander*, 572 F.2d 1219 (8th Cir. 1978)...................................... 24-25

*Lamar v. United States*, 241 U.S. 103 (1916)....................................................16, 17

*Lippmann v. United States*, 127 Fed. Cl. 238 (2016) .............................................12

*Metz v. United States*, 466 F.3d 991 (Fed. Cir. 2006) ...............................................8

*Motto v. United States*, 360 F.2d 643 (Ct. Cl. 1966) ..............................................25

*Murphy v. United States*, 993 F.2d 871 (Fed. Cir. 1993) ...........................25, 26, 27

*Roberts v. United States*, 151 Ct. Cl. 360 (1960)......................................................25

*Rowker v. United States*, 650 F.2d 290 (Ct. Cl. 1980) .....................................26, 27

*Sanders v. Kohler Co.*, 641 F.3d 290 (8th Cir. 2011)...................................8, 36, 37

*Sargisson v. United States*, 913 F.2d 918 (Fed. Cir. 1990) ..............................26, 27

*Sherengos v. United States*, 214 Ct. Cl. 749 (1977) .........................................26, 27

*Strategic Hous. Fin. Corp. v. United States*, 608 F.3d 1317 (Fed. Cir. 2010) ........22

*Telecare Corp. v. Leavitt*, 409 F.3d 1345 (Fed. Cir. 2005) ........................ 15-16, 17

*Tippins v. United States*, 154 Fed. Cl. 373 (2021)....................................................2

*Tippins v. United States*, 157 Fed. Cl. 284 (2021)....................................................2

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988)...................................................................................21

*Vierrether v. United States*, 27 Fed. Cl. 357 (1992) ................................................27

*Wyatt v. United States*, 23 Cl. Ct. 314 (1991)............................................................8

*Wilder v. Merit Sys. Prot. Bd.*, 675 F.3d 1319 (Fed. Cir. 2012).............................24

## TABLE OF AUTHORITIES (continued)

**Statutes:** **Page(s):**

2 U.S.C. § 1315 .......... 37
5 U.S.C. § 861 (1964) .......... 29
5 U.S.C. § 2101 .......... 18
5 U.S.C. § 2105 .......... 18
5 U.S.C. § 3501 .......... 30
5 U.S.C. § 3502 .......... 30, 32, 33
5 U.S.C. § 3502 (1970) .......... 29
5 U.S.C. § 3595 .......... 30
5 U.S.C. § 5361 .......... 30
5 U.S.C. § 5362 .......... 30
5 U.S.C. § 7511 .......... 31
5 U.S.C. § 7512 .......... 30, 33
5 U.S.C. § 7513 .......... 33
10 U.S.C. § 101 .......... 12, 18
10 U.S.C. § 505 .......... 18
10 U.S.C. § 531 .......... 18
10 U.S.C. § 571 .......... 18-19
10 U.S.C. § 601 .......... 19
10 U.S.C. § 624 .......... 19
10 U.S.C. § 1169 .......... 5, 12, 14
10 U.S.C. § 1174a .......... 9, 10, 19-22

**TABLE OF AUTHORITIES (continued)**

**Statutes (continued):** **Page(s):**

14 U.S.C. § 357 (2012) ........ *passim*

28 U.S.C. § 1295 ........ 1

29 U.S.C. § 621 ........ 36

29 U.S.C. § 623 ........ 36

29 U.S.C. § 630 ........ 36

29 U.S.C. § 633a ........ 36

29 U.S.C. § 2101 ........ 36-37

Act of Sept. 6, 1966, Pub. L. 89-554, 80 Stat. 428 (1966) ........ 29

Coast Guard Authorization Act of 2016, Pub. L. 114-120, § 215, 130 Stat. 45 (2016) ........ 1, 6

Coast Guard Authorization Act of 1991, Pub. L. 102-241, 105 Stat. 2211 (1991) ........ 15, 22

National Defense Authorization Act for Fiscal Years 1992 and 1993, Pub. L. 102-190, 105 Stat. 1394 (1991) ........ 22

**Legislative History:**

H.R. Rep. No. 102-132, 102nd Cong., 1st Sess. 29 (1991) ........ 15

H.R. Rep. No. 89-901, 89th Cong., 1st Sess. (1965) ........ 29

S. Rep. No. 114-168, 114th Cong., 1st Sess. 13 (2015) ........ 6

S. Rep. No. 102-169, 102nd Cong., 1st Sess. 9 (1991) ........ 15

S. Rep. No. 89-1380, 89th Cong., 1st Sess. (1966) ........ 29

**Regulations:**

5 C.F.R. part 351 ........ 30, 32

## TABLE OF AUTHORITIES (continued)

**Regulations (continued):** **Page(s):**

5 C.F.R. § 351.201 .......... 31, 32, 34-35

5 C.F.R. § 351.401 .......... 32, 34, 35

5 C.F.R. § 351.501 .......... 35

5 C.F.R. § 351.901 .......... 32, 33

**Other Authorities:**

Merriam-Webster's Collegiate Dictionary (9th ed. 1990) .......... 16, 29

Random House Unabridged Dictionary of the English Language (2d ed. 1987) .......... 16-17

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for defendant-appellant, the United States, states that he is not aware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title. Ongoing proceedings in this case before the Court of Federal Claims will be directly affected by the Court's decision in this appeal. Counsel is not aware of any other case pending in this or any other court that may directly affect or be directly affected by this Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

The Court possesses jurisdiction to entertain this appeal from a partial final judgment of the United States Court of Federal Claims (trial court). 28 U.S.C. § 1295(a)(3). The trial court entered the partial final judgment in December 2021, Appx11, and we timely filed a notice of appeal in February 2022. *See* Appx9-10.

## STATEMENT OF THE ISSUE

Whether the trial court erred in holding that involuntarily retiring hundreds of enlisted Coast Guard members, without eliminating military positions, did not constitute a "reduction in force" within the meaning of 14 U.S.C. 357(j) (2012).[1]

## STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS

### I. Nature Of The Case

Plaintiffs-appellees (plaintiffs) are former enlisted service members in the United States Coast Guard. The Coast Guard selected plaintiffs for involuntary retirement during Active Duty Enlisted Career Retention Screening Panels (CRSPs) in 2012, 2013, and 2014. During the CRSP process, the Coast Guard did not use enlisted personnel board procedures set forth in 14 U.S.C. § 357(a)-(g),

[1] In 2016, Congress repealed the relevant provisions of 14 U.S.C. § 357 (2012). Coast Guard Authorization Act of 2016, Pub. L. 114-120, § 215, 130 Stat. 45 (2016) (repealing subsections (a)-(h) and (j) of section 357). All citations to section 357 in this brief refer to the 2012 edition of title 14, United States Code, a copy of which is reproduced in the appendix. Appx37-38.

which do not apply "[w]hen the Secretary orders a reduction in force."[2] 14 U.S.C. § 357(j). The Secretary invoked 14 U.S.C. § 357(j) and authorized the Coast Guard to conduct the 2012, 2013, and 2014 CRSPs to reduce the size of the retirement eligible enlisted workforce.[3] Appx39-44. The Coast Guard involuntarily retired approximately 358 enlisted members, including plaintiffs, as a result of the 2012, 2013, and 2014 CRSPs. *See* Appx15.

In 2018, six named plaintiffs filed a putative class action asserting wrongful discharge claims. *See* Appx2. In July 2021, the trial court issued a published opinion, *Tippins v. United States*, 154 Fed. Cl. 373 (2021) (*Tippins I*), which held that the six plaintiffs' involuntary retirements were unlawful because the CRSPs were not a "reduction in force" within the meaning of section 357(j), such that the procedures set forth in section 357(a)-(g) were violated. Appx12-27. In December 2021, the trial court issued another published opinion, *Tippins v. United States*, 157 Fed. Cl. 284 (2021) (*Tippins II*), which denied our motion for reconsideration, and

---

[2] From 1991 through 2003, the Coast Guard was a component of the Department of Transportation (DOT), and the Secretary of DOT possessed the reduction in force authority set forth in section 357(j). In 2003, the Coast Guard became a component of the Department of Homeland Security (DHS), and then the Secretary of DHS possessed that authority.

[3] DHS Secretary Janet A. Napolitano signed the 2012 and 2013 CRSP memoranda. Appx39-42. DHS Secretary Jeh H. Johnson signed the 2014 CRSP memorandum. Appx43-44. For ease of reference in this brief, we collectively refer to Secretaries Napolitano and Johnson as "the Secretary."

directed a partial final judgment upon the six plaintiffs' claims while proceedings continue with respect to a putative class of similarly situated individuals. Appx28-36. The United States appeals from the partial final judgment. Appx11.

II. Statement Of Facts

The Coast Guard reduced the retirement-eligible enlisted workforce through five separate CRSPs in 2010, 2011, 2012, 2013, and 2014. Appx39-44; Appx66. Presumably because claims relating to the 2010 and 2011 CRSPs were time barred, this 2018 lawsuit only challenges involuntary retirements pursuant to the 2012, 2013, and 2014 CRSPs. There is no challenge to the 2010 or 2011 CRSPs in this case.

The CRSPs were necessary to reduce the bloated size of the retirement eligible enlisted workforce following the Great Recession and thus increase opportunities for advancement by high performing junior enlisted personnel. Appx39-44; Appx66. For this reason, the Coast Guard generally did not eliminate positions when senior enlisted members were selected for involuntary retirement by the CRSPs. Appx16. In other words, by increasing turnover with involuntary retirements of enlisted members in higher grades, while maintaining a stable number of positions for enlisted members in those higher grades, the Coast Guard reduced the size of the retirement eligible enlisted workforce and increased opportunities for advancement among enlisted members in junior grades.

For the most part, the Secretary's memoranda authorizing the 2012, 2013, and 2014 CRSPs are identical in relevant part. Appx39-44. In each authorization, the Secretary "determined that holding another [CRSP] panel . . . is in the best interest of the Coast Guard." Appx39, Appx41, Appx43. The Secretary explained that each "CRSP is designed to strategically rebalance the enlisted force toward a more upwardly mobile, performance based demographic," because "[r]elatively stagnant military end-strength and lower than normal attrition rates continue to result in lower than normal accession forecasts," and "[t]hese dynamics jeopardize the future military workforce of the Coast Guard by slowing the advancement of the Coast Guard's most high performing enlisted members." *Id.* The Secretary elaborated that "[t]hose [enlisted members] not selected for continued service will be involuntarily retired," and "[m]embers identified for involuntary retirement will be entitled to full retirement benefits." *Id.* The Secretary added that "[t]hese retirements will allow continued accessions and advancements that are *essential* for a healthy enlisted workforce." *Id.* (emphasis supplied). The Secretary concluded that the CRSPs "will ensure the high performance of our enlisted members," Appx40, while "ensur[ing] that we retain the best of our retirement eligible senior enlisted personnel." Appx42, Appx44.

The Secretary's memoranda also discuss the legal authority for the CRSPs. Appx39, Appx41, Appx43. In each memo, the Secretary determined that "[t]he

legal authority to conduct a CRSP panel derives from title 10, U.S. Code Section 1169 and title 14, U.S. Code Section 357(j)." *Id.* The Secretary explained that, (1) "[u]nder Section 1169, regular enlisted members of an armed force may be discharged, before service term expiration, as the Secretary concerned may prescribe," and (2) "[u]nder Section 357(j), the Secretary . . . may authorize involuntary retirements without action by Enlisted Personnel Boards pursuant to a 'reduction in force.'" *Id.* The Secretary added that a legal review had "determined [the CRSP process] complies with applicable laws and regulations." Appx39. Each memo concluded that the Secretary's "endorsement . . . will provide the Coast Guard with the legal authority required to conduct the CRSP." Appx40, Appx42, Appx44.

The Secretary's memoranda also separately address how the "reduction of force" pursuant to section 357(j) would be communicated to the fleet, which includes both enlisted and civilian workforces. Appx39; Appx41; Appx43. The Secretary stated: "[i]n order to avoid creating confusion in the fleet, the CRSP process does not include the term 'reduction in force,' which has specific meanings in other statutory contexts" that may apply to civilian employees, whereas, "title 14 does not define, directly or by reference, [a] 'reduction in force'" for enlisted service members. Appx39; Appx41; *accord* Appx43.

Finally, the Secretary described ongoing legislative efforts to make the CRSP process more efficient by delegating to the Coast Guard permanent authority to conduct reductions in force using CRSPs without the need for Secretarial approval. Appx40. Specifically, the Secretary stated that the Coast Guard was "in the process of submitting a Legislative Change Proposal (LCP) granting the Coast Guard permanent authority to hold this [CRSP] panel as needed," but, "since the LCP approval may take several years," the Secretary granted the Coast Guard approvals "while awaiting [the Coast Guard's own] permanent authority." *Id.* This legislative change proposal came to fruition in 2016, when Congress repealed the relevant provisions of section 357. Coast Guard Authorization Act of 2016, Pub. L. 114-120, § 215, 130 Stat. 45 (2016) (repealing the enlisted personnel board procedures in section 357(a)-(g) along with the reduction in force exception in section 357(j)). In an accompanying report, the Senate Committee on Commerce, Science, and Transportation stated that this repeal would "enable the [Coast Guard] to more efficiently conduct career retention screening panels during reductions in force or performance-based senior enlisted continuation boards common to the other military services, specifically the Department of the Navy." S. Rep. No. 114-168, 114th Cong., 1st Sess. 13 (2015).

In sum, the Coast Guard "sought and received authorization from the Secretary . . . *to reduce the size of the retirement eligible enlisted workforce*" through CRSPs pursuant to section 357(j). Appx66.

III. <u>The Course Of Proceedings And Disposition Below</u>

In 2018, six named plaintiffs filed a putative class action asserting wrongful discharge claims. *See* Appx2. In April 2019, we filed a certified administrative record comprised of the documents reflecting the Secretary's decisions to authorize the CRSPs, the conduct of the CRSPs themselves, and the named plaintiffs' official military personnel files. *See* Appx3.

In *Tippins I*, the trial court recognized that "plaintiffs' involuntary retirements through the CRSPs were only lawful if they were part of a 'reduction in force' ordered by the Secretary . . . under § 357(j)," and this "case turns on the meaning of those three words." Appx17. The trial court held "that a 'reduction in force' is the elimination of positions or jobs, not merely the separation of personnel." Appx18. The trial court reached this conclusion primarily based upon its belief that "the Federal Circuit has defined 'reduction in force' in other circumstances" involving civil service employees, and a "'reduction in force' necessarily involves the elimination of positions as a prerequisite." *Id.* (citing *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002); *Huber v. Merit Sys. Prot. Bd.*, 793 F.2d 284, 286 (Fed. Cir. 1986); *Gandola v. F.T.C.*, 773 F.2d

308, 310 (Fed. Cir. 1985)). The trial court also relied on decisions by two other courts of appeals in the context of statutes governing private employers. *Id.* (citing *Sanders v. Kohler Co.*, 641 F.3d 290, 294 (8th Cir. 2011); *Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990)). Relying heavily upon these decisions from the realm of civilian employees, the trial court held that the military statute at issue, section 357(j), is unambiguous. Appx20-22. In the alternative, the trial court held that the Secretary had not offered an interpretation of the statute that would be entitled to deference even if the statute was held to be ambiguous. Appx22-26. Accordingly, the trial court granted summary judgment for the plaintiffs.[4] Appx27.

---

[4] By deciding this military pay case on a summary judgment standard of review under Rule 56, the trial court erroneously departed from the Administrative Procedure Act (APA) standard for judgment upon the administrative record under Rule 56.1. Order at 2, July 2, 2019, ECF No. 22; Order at 6, Aug. 10, 2020, ECF No. 52; *see Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006) ("[T]he Court of Federal Claims reviews [a military board] action *under the same standard as any other agency action*, [which is] whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law.") (emphasis supplied); *see also Allphin v. United States*, 758 F.3d 1336, 1341-44 (Fed. Cir. 2014) (affirming denial of motion to supplement record when service member had not sought review by a corrections board); *Bateson v. United States*, 48 Fed. Cl. 162, 164 (2000) (denying motion to supplement, explaining that, in "cases where an officer has not pursued an administrative appeal the officer has waived the right to make an administrative record and has to rely in a subsequent action for judicial review on the evidentiary record before the deciding official"), *aff'd*, 64 F. App'x 244 (Fed. Cir. 2003); *Wyatt v. United States*, 23 Cl. Ct. 314, 318-19 (1991) (finding "no reason why this [APA] standard should not apply" when "reviewing the battalion commander's decision (as opposed to a decision of a discharge review board or a records correction board"). Nevertheless, this case largely turns on a legal

We filed a motion for reconsideration of *Tippins I* based on several grounds. *See* Appx8. First, we argued that the trial court had overlooked dictionary definitions, along with Congress' history of using the terms "reduction in force" and "reduction in personnel" interchangeably, which demonstrate that the plain meaning of "reduction in force" includes a reduction in personnel. Second, we argued that the trial court erroneously assumed that statutes governing reductions in force in the civilian sphere have a "similar purpose" to military statutes in light of important differences in the statutory schemes. Third, we argued that the trial court had erred in holding that this Court has "defined" reduction in force in civilian employment cases, when this Court actually applied the regulatory framework applicable to civilian employees and did not purport to adopt an all-encompassing definition. Fourth, we argued that the trial court overlooked another military statute, 10 U.S.C. § 1174a, which uses the term "reduction in force" in the context of an incentive program for separating enlisted members without any requirement of a reduction in positions.

---

question of statutory interpretation, such that the differences between the standards of review under Rules 56 and 56.1 should be relatively minor. Although the trial court erroneously relied upon extra-record documents relating to the 2010 CRSP that was not at issue in this case, Appx13-14, Appx20, Appx25 (*Tippins I*); Appx29-30, Appx32-33 (*Tippins II*), the trial court stated that such material was "not particularly consequential at summary judgment." Appx32 (*Tippins II*).

In *Tippins II*, the trial court denied our motion for reconsideration. Appx28-36. First, the trial court dismissed our entire plain meaning argument as "dictionary shopping," even though there were several definitions in the record and all of them were consistent. Appx31. Next, without addressing any of the differences in the statutory schemes that govern military members and civilian employees, the trial court held that decisions involving civil service employees "remain[] useful in a vacuum created by the complete absence of a definition unique to 14 U.S.C. § 357." Appx32. The trial court also declined to consider 10 U.S.C. § 1174a because it governs voluntary separation benefits rather than involuntary separations. *Id.* Finally, the trial court directed entry of a partial final judgment in favor of the six named plaintiffs so that the time for appellate review may commence while class action proceedings continue with respect to several hundred other putative class members.[5] Appx11; Appx36.

This appeal followed.

## SUMMARY OF THE ARGUMENT

A cascade of errors led to the partial final judgment in favor of plaintiffs. Specifically, in holding "that a 'reduction in force' is the elimination of positions or jobs, not merely the separation of personnel," Appx18, the trial court refused to

[5] After entering the partial final judgment, the trial court granted plaintiffs' motion for class certification, and plaintiffs have filed several hundred consents for class members to opt-in to assert claims against the United States in this case.

apply traditional means of statutory construction, disregarded important differences in the statutory schemes governing military service members and civil service employees, grafted judicial descriptions of civilian regulations onto a military statute, and curtailed the Secretary's military authority in a way that Congress never expressed. The Court should vacate the partial final judgment and remand with instructions for the trial court to enter judgment in favor of the United States.

## ARGUMENT

### I. Standard Of Review

This Court reviews a grant of summary judgment "without deference." *Consol. Coal Co. v. United States*, 528 F.3d 1344, 1347 (Fed. Cir. 2008). The question before the Court is one of statutory interpretation. "Statutory interpretation is a question of law that [the Court] review[s] *de novo*." *Id.* (citation omitted). "*De novo*" review means a "complete and independent review" of the issue. *Consol. Coal Co. v. United States*, 351 F.3d 1374, 1377 (Fed. Cir. 2003).

### II. The Trial Court Misconstrued The Plain Meaning Of "Reduction In Force" In Section 357(j) As Necessarily Requiring Elimination Of Military Jobs, When Dictionary Definitions And The Statutory Scheme Establish That A Reduction In Military Force Includes A Reduction In Military Personnel

Congress broadly authorized, but did not define, the parameters for military reductions in force. Dictionary definitions indicate that a "reduction in force" in the military context may involve a reduction in the size of military personnel units and discharges of individual military members. The dictionary definitions make

sense in the context of the statutory scheme for enlisted military members who serve in a particular grade, not in a particular position. In this respect, the military is different from the civilian sphere. The military cannot reduce the size of the enlisted workforce (or any portion thereof) by eliminating positions because military members serve on enlistment contracts and therefore remain in the force regardless of whether any particular position exists. That is why, in the military, reductions in force target categories of enlisted personnel for discharge, as Congress recognized elsewhere in the statutory scheme.

### A. Congress Broadly Authorized, But Did Not Define, Reductions In Force

The Secretary's memoranda authorizing the 2012, 2013, and 2014 CRSPs invoked statutory authority in 10 U.S.C. § 1169 and 14 U.S.C. § 357(j). Appx39, Appx41, Appx43. Section 1169 provides: "No regular enlisted member of an armed force may be discharged before his term of service expires, except (1) *as prescribed by the Secretary concerned*; (2) by sentence of a general or special court martial; or (3) as otherwise provided by law." 10 U.S.C. § 1169 (emphasis supplied); *see also* 10 U.S.C. § 101(a)(4) ("The term 'armed forces' means the . . . Coast Guard."). The Secretary of DHS is the "Secretary concerned" for the Coast Guard when it is not operating as part of the Navy. 10 U.S.C. § 101(a)(9)(D).

Section 1169 conferred upon the Secretary the authority to prescribe CRSPs for the involuntary retirement of enlisted Coast Guard members. *See* 10 U.S.C.

§ 1169(1); *Lippmann v. United States*, 127 Fed. Cl. 238, 250-51 (2016). Likewise, this Court previously found that section 1169 confers upon the Secretaries of military components authority to make targeted reductions within particular grades to ensure proper functioning of the military workforce. *Allphin v. United States*, 758 F.3d 1336, 1342 (Fed. Cir. 2014). The Secretary's contemporaneous rationale in this case – reducing the number of retirement eligible enlisted members to ensure proper functioning of the workforce (Appx39-44) – is substantively identical to the Navy's reason for personnel reductions that were sustained by this Court in *Allphin*. Plaintiffs' only legal challenge in this case is whether section 357 nevertheless required the Coast Guard to follow enlisted personnel board procedures prior to ordering their involuntary retirements as part of what the Secretary authorized as a reduction in force.

Section 357 authorized the Commandant of the Coast Guard to involuntarily retire service members with 20 or more years of service on the recommendation of an "enlisted personnel board," convened by the Commandant. Appx37, 14 U.S.C. 357(a) (2012). A service member could be retired through those procedures only on two specified grounds: "(1) because the member's performance is below the standards the Commandant prescribes; or (2) because of professional dereliction." 14 U.S.C. 357(b) (2012). Any member whose service was under review by an enlisted personnel board was entitled to notice, an opportunity to submit a written

rebuttal, and an opportunity to appear and present witnesses at a hearing. 14 U.S.C. 357(c) (2012). If the enlisted personnel board recommended involuntary retirement, the member was then entitled to additional procedural protections before the Commandant could act on the recommendation. 14 U.S.C. 357(f) (2012). However, Congress established an exception in section 357(j), which allowed the Coast Guard to dispense with enlisted personnel boards during a "reduction in force." 14 U.S.C. 357(j) (2012). Section 357(j) provided that, "[w]hen the Secretary orders a reduction in force, enlisted personnel may be involuntarily separated from the service without the Board's action." *Id.*

The Secretary's contemporaneous memoranda discuss the legal authority for the 2012, 2013, and 2014 CRSPs. Appx39, Appx41, Appx43. In each memo, the Secretary determined that "[t]he legal authority to conduct a CRSP panel derives from" section 1169 *and section 357(j)*." *Id.* (emphasis supplied). The Secretary properly explained that, (1) "[u]nder Section 1169, regular enlisted members of an armed force may be discharged, before service term expiration, as the Secretary concerned may prescribe," *and* (2) "*[u]nder Section 357(j)*, the Secretary . . . may authorize involuntary retirements without action by Enlisted Personnel Boards pursuant to a 'reduction in force.'" *Id.* (emphasis supplied). By invoking these authorities, including section 357(j), the Secretary expressly intended to "provide

the Coast Guard with the legal authority required to conduct the CRSP[s]" in 2012, 2013, and 2014.[6] Appx40, Appx42, Appx44.

### B. Dictionary Definitions Demonstrate That The Plain Meaning Of "Reduction In Force" Includes Reductions Of Military Personnel

When Congress enacted section 357(j) in 1991, the legislature did not define the term "reduction in force." Coast Guard Authorization Act of 1991, Pub. L. 102-241, § 6(a), 105 Stat. 2211 (1991). There is no discussion of what constitutes a "reduction in force" in the legislative history of section 357 either. S. Rep. No. 102-169, 102nd Cong., 1st Sess. 9 (1991) ("These [board review] procedures [in section 357] would not be required during mandated reductions in force."); H.R. Rep. No. 102-132, 102nd Cong., 1st Sess. 29 (1991) ("When the Secretary orders a reduction in force, enlisted personnel may be involuntarily retired without [b]oard action.").

In the absence of a statutory definition, this Court has held that "the plain meaning of a statute is to be ascertained using standard dictionaries in effect at the time of the statute's enactment." *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1353

[6] To the extent that the trial court may have had a concern that the Secretary's understanding of section 357(j) would have allowed the Coast Guard to separate individual enlisted members while rendering the enlisted board procedures of section 357(a)-(g) a nullity, this never happened and will never happen. The Secretary only invoked the authority conferred by section 357(j) in a few CRSPs involving large-scale reductions of hundreds of enlisted personnel, and that authority will never be invoked again given the repeal of section 357 in 2016.

(Fed. Cir. 2005) (citing *Lamar v. United States*, 241 U.S. 103, 113 (1916)). The contemporaneous dictionary definitions of "force" and "reduction in force" demonstrate that the plain meaning of "reduction in force" may include a reduction in the size of military personnel units and discharges of individual military members. The trial court's plain language analysis is not consistent with these definitions.

The Merriam-Webster's dictionary defines a labor "force" as "a body of persons" that is "available for a particular end." Force, Merriam-Webster's Collegiate Dictionary (9th ed. 1990) (defining "force" as "a body of persons" that are "available for a particular end" when used in the context of a "labor force"), Appx69. In contrast, that dictionary defines a military "force" as "a body" of "troops" that are "assigned to a military purpose." *Id.* (defining "force" as "a body (as of troops or ships) assigned to a military purpose" when used in the context of "military strength"). The Merriam-Webster's dictionary thus indicates that a reduction in military "force" – a reduction in that "body" of "troops" – plainly may involve a reduction in the "troops" that are "available." *See id.*

Likewise, the Random House dictionary defines a "RIF" – the abbreviation of reduction in force – as "a reduction in the personnel of an armed service or unit." RIF, Random House Unabridged Dictionary of the English Language 1655 (2d ed. 1987), Appx73. In other civilian contexts, that dictionary defines a "RIF"

as "a reduction in the number of persons employed by a business, government department, etc., esp[ecially] for budgetary reasons." *Id.* (emphasis supplied). The Random House dictionary also defines the verb, "rif," as "discharg[ing] (a *person*) from military or civil service, esp[ecially] as part of an economy program." *Id.* (emphasis supplied). Accordingly, the Random House dictionary indicates that a "reduction in force" plainly may involve reductions in units of military personnel and discharges of individual military members. *See id.* That is exactly what happened in this case when the Coast Guard reduced the number of the retirement-eligible enlisted members by several hundred upon discharging them as a result of the 2012, 2013, and 2014 CRSPs.

These dictionaries define reductions in force in terms of discharging military personnel, not eliminating military positions. There is no tension in the dictionary definitions in this case and they all support our plain meaning argument. The trial court failed to grapple with them in a meaningful way. By holding that a reduction in force is the elimination of positions, and not merely a reduction in military personnel, the trial court was not faithful to the statutory text and failed to discern the plain meaning of section 357(j) in harmony with the aforementioned dictionary definitions. *See Telecare*, 409 F.3d at 1353 (citing *Lamar*, 241 U.S. at 113).

### C. The Dictionary Definitions Are Consistent With The Statutory Scheme Where Enlisted Members Serve In Grades, Not Positions

The dictionaries that define military reductions in force in terms of discharging personnel, rather than eliminating positions, are consistent with the statutory scheme. Unlike the Federal civil service where employees are appointed to particular job positions, in the military, enlisted members serve under enlistment contracts, serve in particular grades, and are not enlisted to positions, such that, a reduction in positions does not reduce the size of the military workforce.

Specifically, Federal employees are appointed to *positions* in the civil service. 5 U.S.C. §§ 2101(1) ("the 'civil service' consists of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services"), 2105(a) ("employee" generally means an "individual who is . . . appointed in the civil service"). In contrast, enlisted members of the armed forces are defined solely by their duty status and *grade*, not by positions. 10 U.S.C. §§ 101(b)(6) ("'[E]nlisted member' means a person in an enlisted grade."), 505(b) ("A person is enlisted in the . . . Regular Army, Regular Navy, Regular Air Force, Regular Marine Corps, Regular Space Force, or Regular Coast Guard in the grade or rating prescribed by the Secretary concerned."). Likewise, with few exceptions, military officers are appointed to grades, not positions. 10 U.S.C. §§ 531 (commissioned officers are appointed to a commissioned officer grade in a military service), 571 (warrant

officers are appointed to a warrant officer grade), 624(b)(1) (when promoted, commissioned officers are appointed in the grade to which promoted). The only military officers appointed to *positions* are general or flag officers temporarily appointed by the President, with the advice and consent of the Senate, to "positions of importance and responsibility" in the grade of general or admiral or lieutenant general or vice admiral. 10 U.S.C. § 601(a).

Consistent with this statutory scheme, military reductions in force involve reductions in categories of enlisted personnel to ensure the proper functioning of that military workforce. *See*, *e.g.*, *Allphin*, 758 F.3d at 1342. Military branches also create, eliminate, and restructure positions to meet military needs as circumstances change from time to time. Positions help the military manage what the enlisted workforce *does*, but positions are not how the military manages the *composition* of the enlisted workforce under the statutory scheme.

### D. Another Military Statute Reinforces The Plain Meaning Of Section 357(j)

To our knowledge, there are only two provisions in the United States Code in which Congress has used the term "reduction in force" in relation to military service members: section 357(j) and section 1174a. 10 U.S.C. § 1174a; 14 U.S.C. § 357(j). Consistent with the dictionary definitions and statutory scheme discussed above, section 1174a uses the term "reduction in force" in the context of an incentive program for separating enlisted members in certain grades or with certain

years of service, without any requirement to eliminate positions. The trial court declined to consider section 1174a because it pertains to voluntary separations and thus does not apply to the facts of this case. Appx32. Nevertheless, section 1174a helps to illuminate the plain meaning of section 357(j).

Section 1174a prescribes a "special separation benefits program." 10 U.S.C. § 1174a. The applicability of this program is "subject to the needs of the service." *Id.* § 1174a(e). Accordingly, "the Secretary concerned may limit the applicability of a program under this section to any category of personnel defined by the Secretary in order to meet a need of the armed force under the Secretary's jurisdiction to reduce the number of members in certain grades, the number of members who have completed a certain number of years of active service, or the number of members who possess certain military skills or are serving in designated competitive categories." *Id.* § 1174a(e)(1). Moreover, "[a]ny category prescribed by the Secretary concerned for . . . regular enlisted members . . . shall be consistent with the categories applicable to . . . regular enlisted members . . . under . . . any . . . program established . . . by that Secretary for the involuntary separation of such members in the administration of a reduction in force." *Id.* § 1174a(e)(2).

In sum, section 1174a authorizes the Secretary concerned to prescribe categories of enlisted members for a special separation benefits program – to reduce (1) the number of members in certain grades, (2) the number of members

who have completed a certain number of years of active service, or (3) the number of members who possess certain military skills or are serving in designated competitive categories – *as long as those categories are consistent with the categories applicable to a reduction in force*. 10 U.S.C. § 1174a(e)(1)-(2). Section 1174a thus presupposes that various categories to reduce the number of enlisted members (either by grades, years of service, or skills), will correspond to the categories applicable to a reduction in force, when imposing a requirement that those categories must be "consistent." *Id.* Because Congress provided that categories in a special separation benefit program, which would reduce the number of enlisted members (by grades, years of service, or skills), must be consistent with categories in a reduction in force prescribed by the Secretary, it is manifest that Congress understood that reductions in categories of enlisted personnel fall within the plain meaning of a reduction in force under section 357(j).

Although section 1174a does not cross-reference section 357(j), the temporal and topical relationship between these two military provisions is strong. *See Azar v. Alina Health Servs.*, 139 S. Ct. 1804, 1811 (2019) ("This Court does not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes."); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (explaining that the use of the same term in related statutes clarifies the meaning of that term). When Congress enacted section

357(j), it is presumed that the legislature had knowledge of section 1174a and had intended for those two statutes to be construed harmoniously. *See Aectra Ref. & Mktg. v. United States*, 565 F.3d 1364, 1370 (Fed. Cir. 2009) ("Congress is presumed to enact legislation with knowledge of the law and a newly-enacted statute is presumed to be harmonious with existing law and judicial concepts."). This is especially true because sections 357(j) and 1174a were enacted by the same Congress just two weeks apart and generally address the same subject matter. *See* Coast Guard Authorization Act of 1991, Pub. L. 102-241, § 6, 105 Stat. 2211 (Dec. 19, 1991) (amending section 357); National Defense Authorization Act for Fiscal Years 1992 and 1993, Pub. L. 102-190, § 661(a), 105 Stat. 1394 (Dec. 5, 1991) (enacting section 1174a); *Strategic Hous. Fin. Corp. v. United States*, 608 F.3d 1317, 1330 (Fed. Cir. 2010) (Under "the *in pari material* canon . . . courts should interpret statutes with similar language that generally address the same subject matter together, 'as if they were one law.'") (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243-44 (1972)).

Section 1174a thus demonstrates that military reductions in force may involve targeted reductions in enlisted personnel by grade and years of service. As part of the same statutory scheme governing military members, section 1174a sheds light on the plain meaning of section 357(j). After the Secretary exercised her reduction in force authority under section 357(j), Appx39-44, the CRSPs

considered enlisted members based upon their grades and years of service. Appx15; Appx46; Appx59; Appx62-63. This was a reduction in force within the meaning of section 357(j).

### E. The Trial Court Erroneously Relied Upon Cases Regarding Reductions In Force Under Statutes and Regulations Addressing Civilian Employees

Rather than interpret the plain meaning of section 357(j) using dictionary definitions in the context of the statutory scheme, the trial court primarily relied upon cases involving reductions in civilian employees. The trial court's reliance on these cases was flawed because statutes governing civilian employees and military members do not have a similar purpose, and the trial court misconstrued the term "reduction in force" from the civilian sphere in any event.[7]

[7] To the extent that the trial court may have been motivated by a concern that the Coast Guard "was purposefully misleading its own enlisted personnel," Appx32 & n.6, it was unfounded. The Secretary decided not to have the Coast Guard *publicly* describe the CRSPs as a reduction in force "to avoid creating confusion in the fleet," which was comprised of both civilian and military workforces, because the CRSPs were not being conducted pursuant to the statutes and regulations that govern reductions in force for civilian employees. Appx39; Appx41; *accord* Appx43. The lawfulness of the Secretary's reduction in force order does not depend upon how the Coast Guard later messaged that order to the fleet. Indeed, there is no statute or regulation that would have required the Coast Guard to publicly communicate the words "reduction in force" when conducting a reduction in force through the CRSPs, and the Secretary articulated a rational reason for not doing so in this situation where the CRSPs considered only enlisted Coast Guard members, not civilian Coast Guard employees. *See id.*

### 1. Statutes Governing Federal Civil Service Employees And Military Members Do Not Have a Similar Purpose

The trial court took an ill-advised analytical leap. Specifically, the trial court made an assumption that statutes governing reductions in force relative to civilian employees have a "similar purpose" to statutes governing enlisted Coast Guard members. Appx18. This was error. As demonstrated above, the statutory schemes governing military service members and civil service employees are different. Unlike the civilian context where Federal employees are appointed to particular job positions, in the military, enlisted members serve under enlistment contracts and are not enlisted to particular positions, such that, a reduction in military positions does not reduce the size of the military workforce.

Given the differences between the statutory schemes governing military service members and civilian employees, it was error for the trial court to construe a military "reduction in force" statute with reference to any civilian statute. *See Wilder v. Merit Sys. Prot. Bd.*, 675 F.3d 1319, 1322 (Fed. Cir. 2012) ("The Civil Service Reform Act" in title 5 "is directed . . . to [F]ederal civilian service," whereas, "[m]ilitary service is governed by a wholly different statutory scheme, principally lodged in title 10 of the United States Code."); *see also Cornetta v. United States*, 851 F.2d 1372, 1377 (Fed. Cir. 1988) (*en banc*) (explaining that there are "differences between civilian and military service that must be taken account of") (internal quotation marks and citation omitted); *Johnson v. Alexander*,

572 F.2d 1219, 1223-24 & n.4 (8th Cir. 1978) ("While military service possesses some of the characteristics of ordinary civilian employment, it differs materially from such employment in a number of respects . . . and the peculiar status of uniformed personnel of our armed forces has frequently been recognized by the courts.") (collecting cases); *Motto v. United States*, 360 F.2d 643, 646 (Ct. Cl. 1966) ("a civil office is not the same as a military office and the two terms are used in contradiction"); *Roberts v. United States*, 151 Ct. Cl. 360, 364 n.4 (1960) ("Civilian reductions in force involve different considerations of factual settings than do military retired pay cases which involve questions of law.").

The difference between civilian and military contexts also is evident in judicial decisions. In contrast to judicial statements from the civilian context that are cited by the trial court in *Tippins I*, in the military context, this Court and its predecessor the Court of Claims have referred to reductions in military personnel as "reductions in force" without regard for whether any positions were eliminated. *Allphin*, 758 F.3d at 1340-42 (quoting *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993) ("[T]he "merits of the Air Force's decision to release [the plaintiff] from active duty [as part of *reduction-in-force* efforts] are beyond judicial reach") (brackets and alterations supplied by the Federal Circuit in *Allphin*)); *Berkley v. United States*, 287 F.3d 1076, 1081-82 (Fed. Cir. 2002) ("This is a military pay class action case brought on behalf of officers of the United States Air

Force terminated pursuant to a 1993 Reduction in Force" after the Secretary had convened a board to select officers for involuntary separation); *Rowker v. United States*, 650 F.2d 290, 290 (Ct. Cl. 1980) (using the term, "reduction-in-force"); *Davidson v. United States*, 650 F.2d 285, 285 (Ct. Cl. 1980) (same); *Curry v. United States*, 609 F.2d 980, 981, 984 (Ct. Cl. 1979) (same); *Doneghy v. United States*, 618 F.2d 121, 121 (Ct. Cl. 1979) (same); *Sherengos v. United States*, 214 Ct. Cl. 749, 749 (1977) (same); *see also Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990) (as part of a "reduction in manpower requirements, the Secretary of the Air Force convened a Reserve Officer Screening Board (ROSB) . . . to review the records of all reserve officers on active duty . . . and 1133 of them, including Sargisson, were involuntarily released from active duty."); *Anderson v. United States*, 111 Fed. Cl. 572, 583 (2013) (describing *Murphy* and *Sargisson* as "reduction in force" cases), *aff'd sub nom.*, *Allphin v. United States*, 758 F.3d 1336 (Fed. Cir. 2014).

Likewise, in the military context, the trial court previously has referred to reductions in military personnel as "reductions in force" without regard for whether any positions were eliminated. *Crumley v. United States*, 133 Fed. Cl. 607, 609-10 (2017) (referring to a reduction in retirement-eligible military personnel as a "reduction-in-force"); *Anderson*, 111 Fed. Cl. at 583, 585-86 (same, using the terms "reduction in force," "workforce reduction," and "reduction of

enlisted personnel"); *Berkley v. United States*, 59 Fed. Cl. 675, 677 (2004) (same, "reduction in force"); *Alvin v. United States*, 50 Fed. Cl. 295, 296-97 (2001) (same, using the terms "reduction in force" and "reduction in manpower"); *Baker v. United States*, 34 Fed. Cl. 645, 648 (1995) (same, using the terms "reduction in force" and "force reduction"), *rev'd on other grounds*, 127 F.3d 1081 (Fed. Cir. 1997); *Vierrether v. United States*, 27 Fed. Cl. 357, 359 (1992) (same, "reduction in force"), *aff'd without op.*, 6 F.3d 786 (Fed. Cir. 1993) (table)). In *Vierrether*, the trial court addressed a Coast Guard "reduction in force" program that began in 1988, just a few years before Congress enacted section 357(j), without considering whether any positions had been eliminated. 27 Fed. Cl. at 359.

There is no evidence that Congress intended to cause a dramatic change to historical military practice for reducing personnel, just by using the undefined term "reduction in force" in section 357(j). *See Vierrether*, 27 Fed. Cl. at 359 (1988 Coast Guard "reduction in force"); *Murphy*, 993 F.2d at 872 (1975 Air Force reduction in force); *Sargisson*, 913 F.2d at 920 (1974 Air Force reduction in force); *Rowker*, 650 F.2d at 290 (1974 Army "reduction in force"); *Davidson*, 650 F.2d at 285 (1973 Army "reduction in force"); *Curry*, 609 F.2d at 981, 984 (1975 Air Force "reduction in force"); *Doneghy*, 618 F.2d at 121 (1973 Army "reduction in force"); *Sherengos*, 214 Ct. Cl. at 749 (1970 Air Force "reduction in force"). Indeed, the commonplace use of the term "reduction in force" by this Court, the

Court of Claims, and the trial court, to describe reductions in military personnel, further reinforces that the plain meaning of "reduction in force" includes a reduction in military personnel in the military context.

Nevertheless, by relying upon precedents involving civilian employees, the trial court ignored the differences between the statutory schemes governing military service members and civilian employees, ignored historical military practice, and ignored the large body of cases describing (in plain language) numerous reductions in military personnel as reductions in force.

### 2. The Trial Court Misconstrued The Term "Reduction In Force" From The Civilian Sphere

The trial court should not have considered statutes or regulations governing civilian employees, or precedents applying them, when construing the plain meaning of section 357(j). But the trial court did so, and in the process, also misconstrued the term "reduction in force" from the civilian context.

#### a. Congress Has Used The Terms "Reduction In Force" And "Reduction In Personnel" Interchangeably In The Civilian Context

In narrowly construing "a 'reduction in force'" as "the elimination of positions or jobs, not merely the separation of personnel," Appx18, the trial court overlooked that Congress historically has used the terms "reduction in force" and "reduction in personnel" interchangeably in the civil service laws.

In 1966, when Congress recodified 5 U.S.C. § 861(a) (1964) as 5 U.S.C. § 3502(a) (1970), and in the process substituted the term "reduction in force" for the term "reduction in personnel," the legislature did so "without substantive change." *See* Act of Sept. 6, 1966, Pub. L. 89-554, § 1, 80 Stat. 428 (1966) (substituting the term "reduction in force" for "reduction in personnel" in the re-codification of laws related to civilian federal employees in new title 5, United States Code); H.R. Rep. No. 89-901, 89th Cong., 1st Sess. 1 (1965) ("The purpose of this bill is to restate in comprehensive form, without substantive change, the statutes in effect before July 1, 1965, that relate to Government employees, the organization and powers of Federal agencies generally, and administrative procedure, and to enact title 5 of the United States Code."); S. Rep. No. 89-1380, 89th Cong., 1st Sess. 18 (1966) (same); *see also* H.R. Rep. No. 89-901, at 55 ("the words 'reduction in force' are substituted for 'reduction in personnel'"); S. Rep. No. 89-1380, at 74 (same). Indeed, similar to the definition of "force," the Merriam-Webster's dictionary defines "personnel" as "[a] body of persons" that "usu[ally]" are "employed" "in a factory, office, or organization." Personnel, Merriam-Webster's Collegiate Dictionary (9th ed. 1990), Appx70.

The trial court sidestepped our argument about historical use by chiding that it was inconsistent with our argument that the laws governing civilian employees are inapposite. Appx31. We have consistently argued that the laws governing

civilian employees are inapplicable to the military and are inapposite in this case. But our argument about historical use in the civil service laws demonstrates a fallacy in the trial court's reasoning. The trial court could not rely upon the statutes governing civilian employees while simultaneously ignoring what Congress meant by them. For these reasons, Congress' interchangeable use of the terms "reduction in force" and "reduction in personnel" does not alter the plain meaning from the dictionaries that define a military reduction in force as a reduction in military personnel.

b. This Court Has Recognized That Congress Has Not Specified The Circumstances Under Which Reductions In Force May Be Appropriate In The Civilian Sphere

In the civilian sphere, there is a detailed web of statutes and regulations governing reductions in force, which do not apply to the military. *See*, *e.g.*, 5 U.S.C. §§ 3501(b), 3502, 3595, 5361(7), 5362, 7512; 5 C.F.R. part 351. And in the civilian sphere, reductions in force frequently involve a reduction of personnel and positions. But, there is no statute, regulation, or rule, providing that *all* reductions in force must involve a reduction in positions. *See Cross v. Dep't of Transp.*, 127 F.3d 1443, 1447 (Fed. Cir. 1997) ("Congress has not specified the circumstances under which [reductions in force] may be appropriate"). In narrowly construing "a 'reduction in force'" as "the elimination of positions or jobs, not merely the separation of personnel," Appx18, the trial court imposed its

own narrow view of the circumstances under which a reduction in force may be appropriate, when Congress did not express those limitations. This was error.

c. Reductions In Force Are Not Limited To Circumstances With An Elimination Of Jobs In The Civilian Context

The trial court also incorrectly surmised that all reductions in force in the civilian sphere necessarily involve a reduction of positions. Under reduction in force regulations promulgated by the Office of Personnel Management (OPM), 5 C.F.R. § 351.201, a reduction in force may involve a reduction in personnel without a reduction in positions.

For example, as this Court has recognized, furloughs are covered by OPM's reduction in force regulations under 5 C.F.R. § 351.201, *Huber*, 793 F.2d at 286-87, and furloughs do not involve the elimination of a position. 5 U.S.C. § 7511(a)(5) ("'furlough' means the placing of an employee in a temporary status without duties and pay because of lack of work or funds or other nondisciplinary reasons"). OPM's regulations also expressly contemplate targeted "reductions in force in [an] employee's competitive area," 5 C.F.R. § 351.201(a)(2), while agencies may maintain "vacant position[s]." 5 C.F.R. § 351.201(b).

These regulations from the civilian sphere do not apply to enlisted members of the military, but they show that the trial court even misconstrued the term "reduction in force" from the civilian sphere. If this misconstruction were followed in future cases involving civilian employees, it could have consequences

that Congress never intended, such as depriving employees of their reduction in force rights if they are separated or furloughed without an elimination of their vacant position. *See* 5 U.S.C. § 3502; *see also* 5 C.F.R. §§ 351.201, 351.901.

d. The Trial Court Erroneously Relied Upon Precedents Concerning Reductions In Force Involving Civilian Employees

At plaintiffs' urging, the trial court relied upon a line of decisions by this Court in Merit Systems Protection Board (MSPB) appeals. Appx18 (citing *James*, 284 F.3d at 1314; *Huber*, 793 F.2d at 286; *Gandola*, 773 F.2d at 310). In these MSPB appeals, each employee's civilian position had been abolished pursuant to a reduction in force. *James*, 284 F.3d at 1313; *Huber*, 793 F.2d at 285; *Gandola*, 773 F.2d at 310. In the context of resolving these appeals involving civilian positions that were eliminated, the Court described reductions in force as an "administrative *procedure* by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions." *James*, 284 F.3d at 1314 (emphasis supplied). This was not a *statutory* interpretation or a definition; as this Court observed, this was a description of the reduction in force *procedure* established by OPM's *regulations*, 5 C.F.R. §§ 351.201(a)(1), 351.401. *James*, 284 F.3d at 1315 ("OPM has promulgated regulations at 5 C.F.R. part 351 to implement the RIF statutes. *The regulations address* what kinds of actions constitute a RIF and *what procedures must be followed* in determining which

employees will be reassigned during a RIF and which will be separated.") (emphasis supplied). In these MSPB appeals, the Court did not consider, much less decide, whether a reduction in force also may be an administrative procedure by which agencies reduce certain personnel without reducing positions when the OPM regulations *do not apply*, as in the case of military service members.

The Court also had to consider in these appeals whether the MSPB possessed jurisdiction to entertain the appeals in light of 5 U.S.C. §§ 7512 and 7513(d), which grant civilian employees a right to appeal to the MSPB in cases involving enumerated adverse personnel actions (removal, suspension for more than 14 days, reductions in pay or grade, and furlough for 30 days or less), but there is no right to appeal in such cases involving a reduction in force pursuant to 5 U.S.C. § 3502. In contrast, the MSPB possesses jurisdiction to entertain appeals by "an employee who has been furloughed for more than 30 days, separated, or demoted by a reduction in force action." 5 C.F.R. § 351.901.

Against this backdrop, the Court has described a reduction in force "not [as] an adverse personnel action against a particular employee" (such as a removal under 5 U.S.C. § 7512), but instead, as an action "directed solely at a [civilian] position within an agency" (such as a separation due to abolishment of a position in a reduction in force action under 5 C.F.R. § 351.901). *James*, 284 F.3d at 1314; *Huber*, 793 F.2d at 286. The Court was describing reductions in force in the

context of *jurisdictional* issues in those MSPB cases. *See James*, 284 F.3d at 1312 (holding that the MSPB "had jurisdiction over the appeal from her separation.") (emphasis supplied); *Huber*, 793 F.2d at 285 ("Petitioners appeal the decision of the [MSPB] ('Board'), which dismissed petitioners' appeals for lack of jurisdiction. For the reasons that follow, we affirm the decision of the Board."). In contrast, this Court has never described a reduction in force as an action directed at a *military position*, because that would make no sense under the statutory scheme.

Moreover, in *Tippins I*, the trial court misconstrued the Court's decision in *Gandola* as having "made clear that a 'reduction in force' necessarily involves the elimination of positions as a prerequisite." Appx18. *Gandola* does not apply, much less interpret, any Federal statute. Rather, *Gandola* described the two-step process for reductions in force under OPM's regulations, 5 C.F.R. §§ 351.201(a)(1), 351.401. *Gandola*, 773 F.2d at 310 (affirming MSPB decision, explaining: "If the agency proves that the reduction in force regulations were invoked for a legitimate reason and that those regulations were properly applied to the individual employees – as was the case here – the agency action will be sustained."). Specifically, as the Court explained in the civilian context, "[a] reduction in force involves two steps." *Id.* "First, the [civilian] agency determines which positions to abolish." *Id.* (describing the first step of the process, which is governed by 5 C.F.R. § 351.201(a) ("Each agency is responsible for determining

the categories within which positions are required, where they are to be located, and when they are to be filled, abolished, or vacated.”)). “Second, [the civilian agency] selects the people to be eliminated serving in those positions on the basis of their retention standing.” *Id.* (describing the second step of the process, which is governed by 5 C.F.R. § 351.401 (“Each agency shall determine the retention standing of each competing employee on the basis of the factors in this subpart [5 C.F.R. § 351.401 *et seq.*] and in Subpart E of this part [5 C.F.R. §§ 351.501 *et seq.*].”)). The OPM regulations at issue in *Gandola* (and *James* and *Huber*) only apply to civilian employees.

In these MSPB appeals, the Court was describing matters of board jurisdiction and regulatory procedure applicable to civilian employees; it was not defining the term “reduction in force” for purposes of any Federal statute, and certainly not for purposes of a military statute. These MSPB cases do not interpret section 357(j), do not interpret any statute or regulation applicable to the military, do not engage in a plain meaning analysis of “reduction in force,” and do not adopt an all-encompassing definition of “reduction in force” for any purpose. Indeed, the Court has *never* purported to adopt such a definition. It was error for the trial court to graft this Court’s descriptions of OPM regulations onto a military statute.

The trial court also misconstrued two other court of appeals decisions as having interpreted the term “reduction in force” in other Federal statutes. Appx18

(citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990); *Sanders v. Kohler Co.*, 641 F.3d 290, 294 (8th Cir. 2011)). In *Barnes*, the court of appeals considered the appropriate burden of proof for a plaintiff filing suit against a private employer under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. (ADEA). *Barnes*, 896 F.2d at 1464-65. The ADEA does not contain the term "reduction in force" and the court of appeals did not purport to interpret any such term in *Barnes*. Rather, the court of appeals crafted an exception to the normal rules for establishing a *prima facie* case of discrimination under the ADEA in cases of a "work force reduction" by a private employer.[8] *Id.* Defining the contours of this judicially-crafted exception, the court of appeals stated: "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company," and "[a]n employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Id.* at 1465. But, *Barnes* did not interpret the term "reduction in force" in a statute or consider any statute applicable to military members.

Likewise, in *Sanders*, 641 F.3d at 294, the court of appeals interpreted the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2101 *et*

---

[8] *Barnes* involved alleged violations of 29 U.S.C. § 623, the ADA provision that applies to certain private employers and state employees, but not to Federal employees. 29 U.S.C. § 630(b) (ADA definition of "employer" "does not include the United States"). A separate provision, 29 U.S.C. § 633a, applies to civilian Federal employees and was not at issue in *Barnes*.

*seq.*, which applies to "business enterprise[s]," and does not apply to Federal employees in the executive branch whether civilian or military. *See* 29 U.S.C. § 2101(a)(1) (WARN Act definition of "employer" means certain "business enterprise[s]"); *but see* 2 U.S.C. § 1315 (extending certain WARN Act provisions to certain legislative branch employees). The WARN Act defines "mass layoff" as "a reduction in force, which" (A) "is not the result of a plant closing," and (B) "results in an employment loss at the single site of employment during any 30-day period for" (i) at least 50 employees and 33 percent of all employees, or (ii) at least 500 employees. 29 U.S.C. § 2101(a)(3). The court of appeals held that these "numerosity thresholds" and the term "reduction in force" could not be "decouple[d]," such that, taken together, in context, a "'reduction in force'" means "a net loss in the underlying productivity of a business, with the numerosity thresholds specifying the extent of the net loss that must result from such a reduction in force to qualify as a 'mass layoff.'" *Sanders*, 641 F.3d at 294. The court of appeals elaborated that "employees who are fired but replaced are not part of a reduction in force and do not count as part of the aggregate number of employee layoffs that must be met to satisfy the numerosity thresholds of § 2101(a)(3)." *Id.* In contrast, Congress did not include any numerosity thresholds in 14 U.S.C. § 357(j) or make the WARN Act applicable to the military.

It was error for the trial court to rely upon judicial statements about different statutory schemes with different provisions that are applicable to private employers when interpreting a military statute. Instead, the trial court should have remained faithful to the dictionary definitions and statutory scheme for military members when ascertaining the plain meaning of "reduction in force" in section 357(j).

## CONCLUSION

For these reasons, we respectfully request that the Court vacate the partial final judgment of the Court of Federal Claims and remand with instructions to enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

/s/ Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-9303

Attorneys for Defendant-Appellant

Of Counsel:

CDR JARED H. HOOD
Deputy Chief
Office of Claims & Litigation
United States Coast Guard
2703 Martin Luther King Jr. Ave SE
Washington, D.C. 20593-7213

July 25, 2022

CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of July, 2022, I caused to be served electronically to all parties by operation of the Court's electronic filing system, a copy of the foregoing document, "Brief For Defendant-Appellant United States."

/s/ Douglas G. Edelschick

## CERTIFICATE OF COMPLIANCE

I hereby certify that this response: (1) complies with the type volume limitation of Federal Circuit Rule 32(a); (2) contains 9,212 words, excluding the portions of this response exempted from the type volume limitation by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b); (3) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5); (4) complies with the type style requirements of Federal Rule of Appellate Procedure 32(a)(6); and (5) has been prepared on a computer in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman type style and 14 point size. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system that was used to prepare the response.

/s/ Douglas G. Edelschick