2022-1462

---

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

TONIA TIPPINS, DERRIK MAGNUSON, GEORGE HOLLOWAY, JENNIFER REHBERG, GLENDA SMITHLEETH, M. ALLEN BUMGARDNER, For Themselves and as Representatives of a Class of Similarly Situated Persons,
Plaintiffs-Appellees,

v.

UNITED STATES,
Defendant-Appellant.

---

Appeal from the United States Court of Federal Claims
in Case No. 1:18-CV-00923, Judge David A. Tapp

---

# REPLY BRIEF FOR DEFENDANT-APPELLANT UNITED STATES

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-9303

Attorneys for Defendant-Appellant

Of Counsel:

CDR JARED H. HOOD
Deputy Chief
Office of Claims & Litigation
United States Coast Guard
2703 Martin Luther King Jr. Ave SE
Washington, D.C. 20593-7213

February 3, 2023

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ....................................................................... ii

I. The Trial Court Misconstrued The Plain Meaning Of "Reduction In Force" In Section 357(j) As Necessarily Requiring Elimination Of Military Jobs, When Dictionary Definitions And The Statutory Scheme Establish That A Reduction In Military Force Includes A Reduction In Military Personnel ........................................................................ 1

II. Plaintiffs Improperly Rely Upon Irrelevant, Extra-Record Documents That Have No Bearing On The Statutory Interpretation Issue Presented .... 16

CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Cases:** **Page(s):**

*Allphin v. United States*, 758 F.3d 1336 (Fed. Cir. 2014)................ 1-2, 13, 17, 18

*Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009) ........... 18

*Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990) ....................... 7, 8, 15, 16

*Bateson v. United States*, 48 Fed. Cl. 162 (2000)....................................... 17-18

*Cross v. Dep't of Transp.*, 127 F.3d 1443 (Fed. Cir. 1997)................................. 5

*Data Gen. Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996) ............................ 15

*Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) ............................ 13

*Enos v. Macy*, 321 F.2d 747 (D.C. Cir. 1963) ................................................... 7

*Fitzgerald v. Hampton*, 467 F.2d 755 (D.C. Cir. 1972)................................... 6-7

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ...................... 13

*Gandola v. F.T.C.*, 773 F.2d 308 (Fed. Cir. 1985) ............................................ 7

*Horne v. MSPB*, 684 F.2d 155 (D.C. Cir. 1982) ................................................ 6

*Huber v. MSPB*, 793 F.2d 284 (Fed. Cir. 1986)................................................ 7

*James v. Von Zemenszky*, 284 F.3d 1310 (Fed. Cir. 2002) ................................. 7

*LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836 (1st Cir. 1993) ................................ 8

*Lippmann v. United States*, 127 Fed. Cl. 238 (2016).................................. 14, 15

*Metz v. United States*, 466 F.3d 991 (Fed. Cir. 2006) ....................................... 18

*Sanders v. Kohler Co.*, 641 F.3d 290 (8th Cir. 2011) .......................... 7, 8, 15, 16

*United States v. Great Am. Ins. Co.*, 738 F.3d 1320 (Fed. Cir. 2013).................... 5

*Washington v. Garrett*, 10 F.3d 1421 (9th Cir. 1993) ........................................ 6

*Welch v. Dep't of the Army*, 323 F.3d 1042 (Fed. Cir. 2003).................. 5-6, 7, 10

**TABLE OF AUTHORITIES (continued)**

**Cases (continued):** **Page(s):**

*Wilder v. Merit Sys. Prot. Bd.*, 675 F.3d 1319 (Fed. Cir. 2012)....9

*Wyatt v. United States*, 23 Cl. Ct. 314 (1991)....18

**Statutes:**

5 U.S.C. § 2101....3

5 U.S.C. § 2105....3

5 U.S.C. § 3501....5

5 U.S.C. § 3502....5

5 U.S.C. § 3595....5

5 U.S.C. § 5361....5

5 U.S.C. § 5362....5

5 U.S.C. § 7511....5

5 U.S.C. § 7512....5

10 U.S.C. § 101....3

10 U.S.C. § 505....3

10 U.S.C. § 1174a....4, 5

14 U.S.C. § 357 (2012)....*passim*

14 U.S.C. § 501....13

14 U.S.C. § 4904....10

Coast Guard Authorization Act of 1991, Pub. L. 102-241,
105 Stat. 2211 (1991)....16-17

**TABLE OF AUTHORITIES (continued)**

**Regulations:** **Page(s):**

5 C.F.R. part 351 .......... 5

5 C.F.R. § 351.201 .......... 5

**Other Authorities:**

*In re Avelsgard*, No. 2013-153 (CGBCMR April 10, 2014) .......... 15, 16

*In re Winbourne*, No. 2011-130 (CGBCMR March 20, 2012) .......... 15, 16

Merriam-Webster's Collegiate Dictionary (9th ed. 1990) .......... 3, 6, 10

Random House Unabridged Dictionary of the English Language (2d ed. 1987) .......... 3, 10

## I. The Trial Court Misconstrued The Plain Meaning Of "Reduction In Force" In Section 357(j) As Necessarily Requiring Elimination Of Military Jobs, When Dictionary Definitions And The Statutory Scheme Establish That A Reduction In Military Force Includes A Reduction In Military Personnel

The United States Coast Guard properly selected plaintiffs for involuntary retirement during Active Duty Enlisted Career Retention Screening Panels (CRSPs) in 2012, 2013, and 2014. During the CRSP process, the Coast Guard did not need to use enlisted personnel board procedures set forth in 14 U.S.C. § 357(a)-(g), which do not apply "[w]hen the Secretary orders a reduction in force" under 14 U.S.C. § 357(j).[1] To ensure a "healthy enlisted workforce," the Secretary of the Department of Homeland Security (DHS) specifically invoked section 357(j) and "authorize[d] involuntary retirements without action by Enlisted Personnel Boards pursuant to a 'reduction in force.'"[2] Appx39, Appx41, Appx43. To carry out this reduction in force, the Coast Guard involuntarily retired approximately 358 enlisted members, including plaintiffs, who were selected by the 2012, 2013, and 2014 CRSPs. *See* Appx15. The Secretary's lawful exercise of statutory authority and military discretion should have been sustained by the trial court. *Cf. Allphin v.*

[1] All citations to section 357 in this reply brief refer to the 2012 edition of title 14, United States Code, which is reproduced in the appendix. Appx37-38.

[2] DHS Secretary Janet A. Napolitano signed the 2012 and 2013 CRSP memoranda. Appx39-42. DHS Secretary Jeh H. Johnson signed the 2014 CRSP memorandum. Appx43-44. For ease of reference in this reply brief, we continue to collectively refer to Secretaries Napolitano and Johnson as "the Secretary."

*United States*, 758 F.3d 1336, 1342 (Fed. Cir. 2014) (holding that Secretaries of military components possess authority to make targeted reductions within particular grades to ensure proper functioning of the military workforce).

Nevertheless, as demonstrated in our opening brief, a series of errors led the trial court to enter a partial final judgment in favor of plaintiffs. Specifically, in holding "that a 'reduction in force' is the elimination of positions or jobs, not merely the separation of personnel," Appx18, the trial court refused to apply traditional methods of statutory construction, disregarded important differences in the statutory schemes governing military service members and civil service employees, grafted judicial descriptions of civilian regulations onto a military statute, and curtailed the Secretary's military authority in a way that Congress never expressed. Appellant's Br. 10-37. In response, plaintiffs reiterate the trial court's faulty reasoning and argue that the Coast Guard's discharge of *several hundred* enlisted military members was not a reduction in force. Appellees' Br. 14-36.

The most glaring flaw in the arguments by plaintiffs is that they look at this case through a lens of civilian employees who are appointed to particular job positions. Looking through this civilian lens, their arguments all proceed from the assumption that there cannot be a reduction in force unless positions are eliminated. Appellees' Br. 1, 14, 16-17, 21. But this point of view assumes its

own conclusion and disregards critical differences in the statutory schemes governing military members and civilian employees.

In our opening brief, we established that, unlike the statutory scheme in title 5 where Federal civil service employees are appointed to particular job positions, in the military, the statutory scheme in title 10 provides that enlisted members serve under enlistment contracts, serve in particular grades, and are not enlisted to positions, such that, a reduction in positions does not reduce the size of the military workforce. Appellant's Br. 18-19 (*comparing* 5 U.S.C. §§ 2101(1), 2105(a), *with* 10 U.S.C. §§ 101(b)(6), 505(b)). In their response brief, plaintiffs do not even cite, much less grapple with, any of these statutory provisions.

In our opening brief, we also demonstrated that contemporaneous dictionary definitions in the record define a reduction in force in terms of discharging military members, not eliminating military positions. Appellant's Br. 15-17 (citing Appx69, Force, Merriam-Webster's Collegiate Dictionary 482 (9th ed. 1990) (defining a military "force" in terms of "troops" and not positions); Appx73, RIF, Random House Unabridged Dictionary of the English Language 1655 (2d ed. 1987) (defining a military "RIF" in terms of "discharg[ing] (a person) from military . . . service")). In response, plaintiffs concede that "those dictionaries indicate that a reduction in force is the reduction in size of the military units by elimination of *personnel*," Appellees' Br. 15 (emphasis supplied), but argue

elsewhere that the only way to reduce the size of a miliary unit is "by the elimination of *positions* in the military." *Id.* at 29 (emphasis supplied); *see also id.* at 2, 12, 15, 29-31. Plaintiffs' argument is unfounded and inconsistent with the dictionary definitions and the statutory scheme governing military service.

Plaintiffs also ask this Court to ignore another provision in the statutory scheme, 10 U.S.C. § 1174a, which is the only other provision in the United States Code in which Congress has used the term "reduction in force" in relation to military members. Appellees' Br. 2, 13, 15, 31-33. Plaintiffs argue that sections 1174a and 357j "do not overlap" and there is no "link" between them, *id.* at 32, but then concede there is a link because section 1174a "prohibits the military from subjecting one category of servicemembers to involuntary separations through reductions in force [under 357(j)] while providing another category of servicemembers incentives to leave the service voluntarily [under section 1174a]." *Id.* at 33. As plaintiffs concede, the plain language of section 1174a shows that Congress understood a military reduction in force could "subject[] one category of servicemembers to involuntary separations," *id.*, and that is exactly what the Coast Guard did in this case when it involuntarily retired several hundred enlisted members through the CRSPs in 2012, 2013, and 2014.[3] *See* Appellant's Br. 19-23.

[3] Plaintiffs' statement of the issues purports to raise a further question of whether the trial court "abused its discretion in denying the Government's motion for reconsideration where the Government raised new arguments that it could have

The civilian lens through which plaintiffs argue this case has several more cracks in it. Specifically, plaintiffs have misconstrued the term "reduction in force" from the civilian sphere as well. In our opening brief, we demonstrated that: (1) there is a detailed web of statutes and regulations governing civilian reductions in force, which do not apply to the military, *see* 5 U.S.C. §§ 3501(b), 3502, 3595, 5361(7), 5362, 7512; 5 C.F.R. part 351; (2) there is no statute, regulation, or rule, providing that *all* reductions in force must involve a reduction in positions, *see Cross v. Dep't of Transp.*, 127 F.3d 1443, 1447 (Fed. Cir. 1997) ("Congress has not specified the circumstances under which [reductions in force] may be appropriate"); and (3) reductions in force sometimes involve a reduction in personnel without a reduction in positions, such as when an agency furloughs civil service employees or separates them while maintaining vacant positions, *see* 5 U.S.C. § 7511(a)(5), 5 C.F.R. § 351.201. Appellant's Br. 30-32; *see also Welch v. Dep't of the Army*, 323 F.3d 1042, 1046 (Fed. Cir. 2003) ("Although a reduction-

raised earlier." Appellees' Br. 3. This is irrelevant because the trial court reached the merits of all the issues raised in our motion for reconsideration, including the only new argument that we made therein relating to section 1174a. Appx32. In any event, the argument section of plaintiffs' response brief does not develop any argument on this point, which itself would support a finding of waiver. *See United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived.").

in-force frequently involves a reduction in the number of employees, it need not do so."). Plaintiffs do not respond to these arguments or authorities.

Plaintiffs also concede that Congress previously used the terms "reduction in force" and "reduction in personnel" interchangeably in the context of Federal civil service employees, but they still argue that "personnel" has to mean positions, and not people. Appellees' Br. 20-21. But, as demonstrated in our opening brief, the word "personnel" is defined with reference to people, and not positions, which refutes plaintiffs' argument. Appellant's Br. 29-30 (citing Appx70, Merriam-Webster's Collegiate Dictionary 878 (9th ed. 1990)). Although the laws governing civil service employees are inapplicable to the military, the historical use of these terms by Congress demonstrates another fallacy in plaintiffs' argument.

While adhering to a mistakenly narrow view of what constitutes a reduction in force in the civilian sphere, plaintiffs proceed to argue that a military reduction in force is no different than a civilian reduction in force, relying on cases that only involve civil service or private employees. Appellees' Br. 2, 9-11, 12-13, 14, 18-21. For example, plaintiffs rely heavily on this Court's decisions in Merit Systems Protection Board (MSPB) appeals, which are readily distinguishable.[4] Appellees'

[4] Plaintiffs also cite to several decisions by other courts of appeals in cases that reviewed decisions by the MSPB and its predecessor, the Civil Service Commission (CSC). Appellees' Br. 20 (citing *Washington v. Garrett*, 10 F.3d 1421, 1429 (9th Cir. 1993) (appeal from MSPB decision in discrimination case); *Horne v. MSPB*, 684 F.2d 155, 159 (D.C. Cir. 1982) (MSPB appeal); *Fitzgerald v.*

Br. 10, 17-20 (citing *Welch*, 323 F.3d at 1046; *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002); *Huber v. MSPB*, 793 F.2d 284, 286 (Fed. Cir. 1986); *Gandola v. F.T.C.*, 773 F.2d 308, 310 (Fed. Cir. 1985)).

In our opening brief, we demonstrated that the trial court had misconstrued this line of MSPB cases. Appellant's Br. 32-35. Specifically, in these MSPB cases, the Court was describing the MSPB's jurisdiction and the Office of Personnel Management (OPM) regulations applicable to civil service employees. *Id.* These MSPB cases do not interpret any statute or regulation applicable to the military, and do not interpret the plain meaning of "reduction in force" in any Federal statute. *Id.* Accordingly, it was error for the trial court to graft this Court's descriptions of OPM regulations onto the military statute at issue in this case, 14 U.S.C. § 357(j). In response, plaintiffs selectively pluck language from this line of MSPB cases, Appellees' Br. 18, without responding to our lengthy analysis of these inapposite decisions. Appellant's Br. 32-35.

Plaintiffs also rely upon other courts of appeals decisions regarding statutory schemes that govern private employers. Appellees' Br. 10-11, 13, 14, 19-21 (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (Age Discrimination in Employment Act (ADEA) case); *Sanders v. Kohler Co.*, 641

---

*Hampton*, 467 F.2d 755, 758 (D.C. Cir. 1972) (CSC appeal); *Enos v. Macy*, 321 F.2d 747, 748 (D.C. Cir. 1963) (CSC appeal)). These additional court of appeals decisions are equally inapposite like the MSPB cases relied upon by the trial court.

F.3d 290, 294 (8th Cir. 2011) (Worker Adjustment and Retraining Notification (WARN) Act case); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 846 (1st Cir. 1993) (ADEA case)). In our opening brief, we demonstrated that *Barnes* involved the ADEA that does not contain the term "reduction in force," *Barnes* did not interpret the term "reduction in force" in any statute, and *Barnes* did not consider any statute applicable to military members.[5] Appellant's Br. 35-36. We also established that *Sanders* involved the WARN Act, which applies to "a reduction in force" that meets certain "numerosity thresholds" for the net loss of employees to qualify as a "mass layoff," and Congress did not include any such numerosity thresholds or a "mass layoff" requirement in section 357(j). *Id.* at 36-37. Accordingly, it was error for the trial court to rely upon judicial statements about different statutory schemes with different provisions that are applicable to private employers when interpreting a military statute. *Id.* at 38. In response, plaintiffs continue to rely upon *Barnes* and *Sanders*, Appellees' Br. 10, 19, 20, 30-31, without responding to our detailed analysis of these inapplicable decisions. Appellant's Br. 35-38.

Plaintiffs further admit that cases cited in our opening brief stand for the "proposition that there are differences between the statutory schemes governing

[5] *LeBlanc*, which quotes *Barnes*, is inapposite for the same reasons as *Barnes*, and *LeBlanc* also undercuts plaintiffs' arguments. *LeBlanc*, 6 F.3d at 845 (affirming summary judgment in favor of a private employer on ADEA claims, stating: "An employer need not dismiss any particular number of employees, or terminate a set percentage of the work force, to institute a reduction in force.").

military service members and civilian employees," Appellees' Br. 25, and that is the proposition for which we cited them. *See*, *e.g.*, *Wilder v. Merit Sys. Prot. Bd.*, 675 F.3d 1319, 1322 (Fed. Cir. 2012) ("The Civil Service Reform Act" in title 5 "is directed . . . to [F]ederal civilian service," whereas, "[m]ilitary service is governed by a *wholly different* statutory scheme, principally lodged in title 10 of the United States Code.") (emphasis supplied). Plaintiffs' argument that the Court should simply ignore all of those differences in the statutory schemes to reach their preferred outcome is unprincipled and untenable.

Plaintiffs also admit that each of the military cases cited in our opening brief "accepts that a reduction in force took place" when there were reductions in military personnel without regard for whether any positions were eliminated. Appellees' Br. 27-29. Plaintiffs purport to distinguish these military cases because they did not "define" the term "reduction in force," *id.* at 28-29, but their civilian cases did not "define" the term "reduction in force" either. Appellant's Br. 30-37. Regardless, the commonplace judicial acceptance of the term "reduction in force" to describe reductions in military personnel in more than one dozen cases further reinforces that the plain meaning of "reduction in force" in the military context *includes* the discharge of hundreds of military personnel in this case. *Id.* at 25-28.

Plaintiffs make several additional arguments that are analytically inconsistent. Plaintiffs concede that a reduction in the Congressionally authorized

end-strength (or end-of-year strength) for the Coast Guard would constitute a reduction in force, Appellees' Br. 15, 22-23, but (1) end-strength is measured by the number of members serving on active duty (both enlisted and officers), rather than a number of positions, 14 U.S.C. § 4904(a) (formerly 14 U.S.C. § 2704), (2) Congress has never required that a military reduction in force must reduce the *overall* size of the *entire* military force, and (3) the definitions of "reduction in force" in the record (Appx69, Appx73) include discharges of military personnel, which is what the Coast Guard did in this case. Appellant's Br. 15-17.

Plaintiffs also argue that a reduction in force cannot possibly involve the discharge of just *one* enlisted member, Appellees' Br. 21-22, 29-31, but that is a red herring because this case involves the discharge of *several hundred* enlisted members (in three large groups selected by the 2012, 2013, and 2014 CRSPs), and there is no dispute that this reduced the size of the retirement-eligible enlisted workforce.[6] Appx15; Appx121, Appx125. In any event, plaintiffs cite a case in which this Court held (albeit in the civilian context) that a reduction in force may involve only one employee and "need not" cause "a reduction in the number of employees." *See Welch*, 323 F.3d at 1046 (affirming MSPB decision sustaining reassignment of one agency employee to inferior position as a legitimate reduction

[6] The Coast Guard initially selected 400 enlisted members for involuntary retirement, Appx125, ultimately retiring approximately 358 of them, including plaintiffs, as a result of the 2012, 2013, and 2014 CRSPs.

in force, stating: "Although a reduction-in-force frequently involves a reduction in the number of employees, it need not do so."), *cited by* Appellees' Br. 18.

Next, plaintiffs appear to argue that the Coast Guard did not reduce the size of the entire enlisted workforce. Appellees' Br. 5, 23. But, during the same time when the 2012, 2013, and 2014 CRSPs reduced the size of the retirement-eligible enlisted workforce by several hundred members, the Coast Guard also reduced the overall size of the enlisted workforce by several thousand members. Appx122-123 (reflecting that the total number of actual enlisted members was higher than the authorized number of enlisted billets at the end of fiscal year 2011, and then the total number of actual enlisted members dropped by 2,618 – from 33,331 at the end of fiscal year 2012 to 30,693 at the end of fiscal year 2015 – and the total number of authorized enlisted billets dropped by 1,407 – from 33,397 at the end of fiscal year 2012 to 31,990 at the end of fiscal year 2015 – in light of current and anticipated budget constraints and competing funding priorities).[7] The CRSPs were just one of "several workforce management tools" in a larger strategy by the Coast Guard to reduce *both* "the overall size of the entire [enlisted] workforce,"

---

[7] Plaintiffs misleadingly argue that, "prior to the establishment of *the CRSP*, the Coast Guard's Chief of Personnel acknowledged that 'body to billet we are doing fine,'" Appellees' Br. 23 (quoting Appx108) (emphasis supplied), when *the CRSP* being discussed in the quoted email from July 2010 was the proposed 2010 CRSP, which is not one of the 2012-2014 CRSPs at issue in this case. By the end of the 2011 fiscal year, shortly before the 2012 CRSP, the Coast Guard's actual enlisted members exceeded the number of authorized billets by 553. Appx123.

*and* "the size of the retirement eligible enlisted workforce."[8] Appx121-125; *see also* Appx66 (the Coast Guard "sought and received authorization from the Secretary . . . *to reduce the size of the retirement eligible enlisted workforce*" through the CRSPs). Although plaintiffs repeatedly argue that the CRSPs did not single-handedly reduce the size of the entire enlisted workforce, there is no dispute that the CRSPs did reduce the size of the retirement-eligible enlisted workforce. The Secretary's contemporaneous rationale in this case – reducing the number of retirement eligible enlisted members to ensure proper functioning of the workforce

[8] "As a workforce management tool, CRSPs reduced the size of the retirement eligible enlisted workforce and increased opportunities for accessions and advancements among the remaining enlisted service members in all grades." Appx121. "[T]he Coast Guard not only had a goal of reducing the overall size of the entire workforce, but also had a goal of rebalancing the workforce to ensure opportunities for continued accessions and advancements, which were essential for the Coast Guard to maintain a healthy enlisted workforce." Appx124. "To achieve these twin goals during the [relevant time] period . . . , the Coast Guard required a combination of (i) reduced numbers of enlisted service members in certain of the lower grades (E-6 and below), (ii) reduced numbers of enlisted billets in certain of the lower grades (E-6 and below), (iii) reduced numbers of retirement eligible enlisted service members and increased turnover in higher grades (E-7 and above), and (iv) stable numbers of enlisted billets in higher grades (E-7 and above)." *Id.* "For example, the increased turnover associated with involuntary retirements of enlisted service members in higher grades (E-7 and above), while maintaining those higher graded billets, reduced the size of the retirement eligible enlisted workforce and increased opportunities for accessions and advancements among the remaining enlisted service members in all grades." *Id.* "Likewise, reducing the number of enlisted service members in certain of the lower grades (E-6 and below), while also reducing the number of enlisted billets in certain of those lower grades, reduced the overall size of the workforce and increased opportunities for accessions and advancements by remaining enlisted service members in those lower grades." Appx124-125.

(Appx39-44) – is substantively identical to the Navy's reason for personnel reductions that was sustained in *Allphin*, 758 F.3d at 1342.

Nevertheless, plaintiffs argue that the exception in section 357(j) should be construed narrowly to ensure that the protections in section 357(a)-(g) apply to them. Appellees' Br. 2, 15, 34-35. Plaintiffs' argument is inconsistent with the canon of construction that statutory exceptions normally are entitled to a fair reading, rather than a narrow interpretation. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) ("[Courts] normally 'have no license to give [statutory] exemption[s] anything but a fair reading.'") (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)).

Plaintiffs also bluster that there should be a "high bar" for the Coast Guard to invoke section 357(j) otherwise it would "eviscerate" the protections of section 357(a)-(g) and render them "nonsensical" and a "nullity." Appellees' Br. 2, 35. However, the only "high bar" that Congress proscribed is that the "reduction in force" authority conferred by section 357(j) only may be invoked by the Secretary of Homeland Security, who is the highest ranking official in the Coast Guard organization. *See* 14 U.S.C. § 501. Congress also provided that the procedural protections in section 357(a)-(g) do not apply "[w]hen" the exception in section 357(j) applies. 14 U.S.C. § 357(j). An exception to a rule always nullifies the operation of the rule in a particular case when the exception applies. Just because

the Secretary exercised military discretion to invoke the reduction in force authority in section 357(j) during the years from 2010 through 2014 does not mean that the provisions of section 357(a)-(g) were a "nullity" or applied with any less force during many other years. The 2013 and 2014 CRSPs also did not consider enlisted members who were considered by the two prior CRSPs, Appx15, so the members who were not selected for involuntary retirement otherwise continued to enjoy the protections of section 357(a)-(g) for several years until the repeal of those provisions in 2016. Plaintiffs overlook all of this in their argument.

Rather than seriously confront the flaws in their own analysis, plaintiffs mount several diversions. Plaintiffs accuse the Government of a "litigation-driven change of positions," asserting that "the Coast Guard itself has argued several times before this [C]ourt . . . that non-military definitions and regulations regarding reductions in force are relevant to the definition of 'reduction in force' in § 357(j)," Appellees' Br. 24-25. But this *never* happened, and plaintiffs do not point to any prior case before this Court where section 357(j) was at issue. Instead, plaintiffs cite a brief that we filed in the trial court in 2015 and two board decisions from 2012 and 2014, which do not support their argument. Appellees' Br. 13, 24-25.

Plaintiffs seize upon a passing citation in a brief that we filed in the trial court nearly eight years ago in a different case, *Lippmann v. United States*, No. 15-192 (Fed. Cl.) (*Lippmann*). Appellees' Br. 13, 24. In *Lippmann*, where a single

plaintiff challenged his separation pursuant to the 2013 CRSP, we argued that the CRSP was a lawful "reduction in force" within the plain meaning of section 357(j), and the trial court did not resolve this issue before the case settled.[9] *Lippmann*, Def. Mot. for J. upon Admin. Record at 19-23, June 30, 2015, ECF No. 10. Specifically, our trial court brief in *Lippmann* argued that a reduction in force may involve a reduction in personnel or a reduction in positions, and we cited *Barnes* in passing for the latter proposition. *Id.* at 22. Our passing citation to *Barnes* in *Lippmann* before the trial court does not undermine our principled distinction of *Barnes* in this case of first impression before this Court.

Plaintiffs also unearth two administrative decisions in which the Coast Guard Board for Correction of Military Records (CGBCMR) cited to either *Barnes* or *Sanders*. Appellees' Br. 24-25 (citing Appx265, *In re Winbourne*, No. 2011-130 (Mar. 20, 2012) (citing *Barnes*); Appx276 n.4, *In re Avelsgard*, No. 2013-153

[9] In *Lippmann*, the trial court held that the Secretary possessed authority under 10 U.S.C. § 1169 to involuntarily retire enlisted members pursuant to the CRSPs, but the Court held the section 357(j) issue "in abeyance" before the case ultimately settled. *Lippmann v. United States*, 127 Fed. Cl. 238, 250-52 (2016). Therefore, plaintiffs' assertion that we somehow changed our position, while factually incorrect, also is irrelevant as a matter of law. *See Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1564 (Fed. Cir. 1996) (rejecting argument that a Federal agency was judicially estopped from taking an arguably different position in subsequent litigation, when the prior proceeding "did not reach or resolve the merits" and the positions were "not inherently inconsistent" in any event, explaining: "The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed.").

(Apr. 10, 2014) (citing *Sanders*)). But the two CGBCMR decisions (*Winbourne* and *Avelsgard*) actually held that the 2010 and 2012 CRSPs constituted *lawful* reductions in force under section 357(j) notwithstanding those cases from the civilian sphere. Appx265-267, *Winbourne* (2010 CRSP); Appx276-278, *Avelsgard* (2012 CRSP). Regardless of a few citations in two board decisions from a decade ago, plaintiffs have misplaced reliance upon *Barnes* and *Sanders* in this case.

## II. Plaintiffs Improperly Rely Upon Irrelevant, Extra-Record Documents That Have No Bearing On The Statutory Interpretation Issue Presented

Plaintiffs' response brief is replete with references to unsworn, extra-record materials that were drafted in whole or in part by Captain Christopher Calhoun *years before* the 2012, 2013, and 2014 CRSPs at issue in this case. Appellees' Br. 5, 6, 10-11, 13, 29, 35 (citing Appx110-111 (first July 20, 2010 email); Appx107-108 (second July 10, 2010 email); Appx113-114 (draft answers to Frequently Asked Questions regarding the 2010 CRSP)); *see also*, *supra*, n.7. The Court should disregard these documents for at least three reasons: (1) they are irrelevant to the statutory interpretation question presented in this case; (2) they are not in the administrative record (AR); and (3) they are inconsistent with a sworn declaration by the author of the documents.

First, this case involves a legal issue of statutory interpretation concerning the meaning of "reduction in force" in section 357(j). The 102nd Congress enacted section 357 in 1991. Coast Guard Authorization Act of 1991, Pub. L. 102-241,

§ 6(a), 105 Stat. 2211 (1991). The documents cited by plaintiffs were prepared by Captain Calhoun nearly two decades later, in 2010. Appx107-108, Appx110-111, Appx113-114. The Court should disregard these documents because they have no relevance to either the statutory interpretation inquiry or the intent of Congress.

Second, the documents cited by plaintiffs were not in the AR. *See* Appx107-108, Appx110-111, Appx113-114. In April 2019, we filed a 735-page, certified AR comprised of documents reflecting the Secretary's decisions to authorize the 2012, 2013, and 2014 CRSPs, the conduct of those CRSPs, and plaintiffs' official military personnel files.[10] *See* Appx3, Appx6 (trial court docket sheet). Military pay cases are decided based upon the AR unless it is shown that the extra-record documents are necessary for "effective judicial review." *See Allphin*, 758 F.3d at 1344 (affirming denial of motion to supplement AR when service member had not sought review by a corrections board, citing *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009), for the proposition that "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review")); *Bateson v. United*

[10] Plaintiffs disparage the AR as "self-selected," Appellees' Br. 8, but it is the record of the Secretary's decisions to authorize the 2012, 2013, and 2014 CRSPs, the conduct of those CRSPs, and plaintiffs' official military personnel files. Plaintiffs do not identify any missing documents, plaintiffs never filed a motion to complete the AR, and the extra-record documents that plaintiffs cite in their brief largely predate the 2010 CRSP, which is not challenged in this case.

*States*, 48 Fed. Cl. 162, 164 (2000) (denying motion to supplement AR, stating: in "cases where an officer has not pursued an administrative appeal the officer has waived the right to make an administrative record and has to rely in a subsequent action for judicial review on the evidentiary record before the deciding official"), *aff'd*, 64 F. App'x 244 (Fed. Cir. 2003); *see also Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006) ("[T]he Court of Federal Claims reviews [a military board] action under the same standard as any other agency action, [which is] whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law."); *Wyatt v. United States*, 23 Cl. Ct. 314, 318-19 (1991) (finding "no reason why this [APA] standard should not apply" when "reviewing the battalion commander's decision (as opposed to a decision of a discharge review board or a records correction board").

Plaintiffs did not move to supplement the AR and cannot show that the cited documents are necessary for judicial review, especially when they long predate the CRSPs at issue and were never considered by the Secretary in making any of the challenged decisions. Although the trial court erroneously decided this case under a summary judgment standard, on appeal, this Court reviews the judgment "without deference," the Court should apply the correct standard of review, and the Court should disregard the extra-record documents cited by plaintiffs. *See Allphin*, 758 F.3d at 1342.

Third, the documents cited by plaintiffs are not sworn and they are not consistent with a sworn declaration by their author, Captain Calhoun. Appx222-224. Then a mid-level manager at the Coast Guard, Captain Calhoun (Ret.) drafted the cited documents in mid-2010.[11] Appx107-108, Appx110-111, Appx113-114. Captain Calhoun's sworn declaration establishes that: (1) he did not exercise any decision making authority regarding the 2010 and 2011 CRSPs; (2) he had no involvement whatsoever with the 2012, 2013, and 2014 CRSPs; (3) his prior unsworn statements did not pertain to legal authority for the 2010 CRSP; (4) his intent in drafting the prior statements cited by plaintiffs was to communicate that the 2010 CRSP would not involve reduction in the overall size of the workforce because it was designed to achieve a targeted reduction in the number of retirement eligible enlisted members;[12] (5) he never intended to suggest in the prior

---

[11] In 2010, Captain Calhoun's chain of command included five higher-level officials at the Coast Guard – the Director for Military and Civilian Workforce and Diversity, the Assistant Commandant for Human Resources, the Deputy Commandant for Human Resources, the Vice Commandant, and the Commandant – all of whom were subordinate to the Secretary of Homeland Security, who exercised the sole authority to order a reduction in force under section 357(j).

[12] Plaintiffs misleadingly tout Captain Calhoun's unsworn emails stating that the anticipated 2010 CRSP was "not a RIF," Appellees' Br. 5-6, 10-11 (quoting Appx108, Appx110), when his sworn declaration explained: "At the time when [he] drafted" these statements, he "used the term, 'RIF,' in all capital letters, to refer to reductions in the overall size of the workforce, which was not consistent with [his] understanding of the purpose of the proposed 2010 CRSP to reduce only the number of retirement eligible enlisted members on active duty." Appx223. Plaintiffs compound this sleight of hand by stating that Captain Calhoun believed "the *CRSPs* were 'not a RIF,'" Appellees' Br. 10 (quoting Appx108) (emphasis

statements cited by plaintiffs that the 2010 CRSP was not a reduction in force under section 357(j); (6) he always understood that the legal authority for the 2010 and 2011 CRSPs was as a reduction in force pursuant to section 357(j); and (7) no one ever told him that the 2010 or 2011 CRSPs were not a reduction in force under section 357(j). Appx222-224, Calhoun Decl. ¶¶ 2-8. Under these circumstances, the trial court declined to "rely on the truth of either Capt. Calhoun's past or present statements for its own legal analysis." Appx26. Yet, in their response brief, plaintiffs frequently rely upon Captain Calhoun's unsworn, irrelevant, and dubious statements. The Court should disregard them.

## CONCLUSION

For these reasons, and for the reasons set forth in our opening brief, we respectfully request that the Court vacate the partial final judgment of the Court of Federal Claims and remand with instructions to enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

---

supplied), when the document cited only pertained to one proposed 2010 CRSP, and at that time no other CRSPs had been proposed, much less authorized.

/s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

/s/ Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-9303

Attorneys for Defendant-Appellant

Of Counsel:

CDR JARED H. HOOD
Deputy Chief
Office of Claims & Litigation
United States Coast Guard
2703 Martin Luther King Jr. Ave SE
Washington, D.C. 20593-7213

February 3, 2023

## CERTIFICATE OF SERVICE

I hereby certify that, on this 3rd day of February, 2023, I caused to be served electronically to all parties by operation of the Court's electronic filing system, a copy of the foregoing document, "Reply Brief For Defendant-Appellant United States."

/s/ Douglas G. Edelschick

CERTIFICATE OF COMPLIANCE

I hereby certify that this brief: (1) complies with the type volume limitation of Federal Circuit Rule 32(b); (2) contains 5,338 words, excluding the portions of this response exempted from the type volume limitation by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b); (3) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5); (4) complies with the type style requirements of Federal Rule of Appellate Procedure 32(a)(6); and (5) has been prepared on a computer in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman type style and 14 point size. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system that was used to prepare the response.

/s/ Douglas G. Edelschick