**No. 2022-1462**

# United States Court of Appeals for the Federal Circuit

TONIA TIPPINS, DERRIK MAGNUSON, GEORGE HOLLOWAY, JENNIFER REHBERG, GLENDA SMITHLEETH, M. ALLEN BUMGARDNER, For Themselves and as Representatives of a Class of Similarly Situated Persons,
Plaintiffs-Appellees,

v.

UNITED STATES,
Defendant-Appellant.,

On Appeal from the United States Court of Federal Claims in Case No. 1:18-CV-00923, Judge David A. Tapp

CORRECTED RESPONSE BRIEF FOR PLAINTIFFS-APPELLEES

Nathan S. Mammen
Grace C. Brier
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 839-5000

*Counsel for Plaintiffs-Appellees*

March 29, 2023

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF THE ISSUES....................................................................2

STATEMENT OF THE CASE....................................................................3

A. The Government Used Career Retention Screening Panels To Forcibly Retire Plaintiffs ....................................................................3

B. Creation Of Career Retention Screening Panels ....................................5

C. Procedural Background ....................................................................8

1. Plaintiff's Complaint and Discovery ....................................8

2. Summary Judgment ....................................................................9

3. Denial of Government's Request for Reconsideration ............12

4. Class Certification Proceedings ....................................14

SUMMARY OF ARGUMENT ....................................................................14

ARGUMENT ....................................................................16

I. Standard Of Review....................................................................16

II. The Court Should Affirm The Judgment Of The Court Of Federal Claims That The CRSPs Did Not Constitute A Reduction In Force ............16

A. "Reduction In Force" Means Reduction in Positions, Not Individuals ....................................................................17

B. A Reduction in Force in the Military Also Involves Reduction in Positions ....................................................................22

C. The Government's Dictionaries Do Not Support Interpreting Reduction In Force As Discharging Individual Servicemembers.......29

D. The Voluntary Special Separation Benefits Program of 10 U.S.C. § 1174a Does Not Support The Government's Interpretation ....................................................................31

E. The Government's Interpretation Is Inconsistent With § 357 As A Whole ....................34

CONCLUSION ....................36

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allphin v. United States*,
758 F.3d 1336 (Fed. Cir. 2014) ....................23

*Alvin v. United States*,
50 Fed. Cl. 295 (2001) ....................27

*Anderson v. United States*,
111 Fed. Cl. 572 (2013) ....................28

*Anderson v. United States*,
23 F.4th 1357 (Fed. Cir. 2022) ....................16

*Azar v. Allina Health Servs.*,
139 S. Ct. 1804 (2019) ....................17

*Baker v. United States*,
34 Fed. Cl. 645 (1995),
*vacated by Baker v. United States*, 127 F.3d 1081 (Fed. Cir. 1997) ....................27

*Barnes v. GenCorp Inc.*,
896 F.2d 1457 (6th Cir. 1990) .................... 10, 19, 30

*Berkley v. United States*,
287 F.3d 1076 (Fed. Cir. 2002) .................... 23, 28

*Chevron, USA., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ....................12

*Cornetta v. United States*,
851 F.2d 1372 (Fed. Cir. 1988) ....................26

*Crumley v. United States*,
133 Fed. Cl. 607 (2017),
*aff'd,* 738 F. App'x 1020 (Fed. Cir. 2018) ....................28

*Curry v. United States*,
609 F.2d 980 (Ct. Cl. 1979) ....................27

*Davidson v. United States*,
650 F.2d 285 (Ct. Cl. 1980) .......... 27

*Doneghy v. United States*,
618 F.2d 121 (Ct. Cl. 1979) .......... 27

*Enos v. Macy*,
321 F.2d 747 (D.C. Cir. 1963) .......... 20

*Entergy Nuclear FitzPatrick, LLC v. United States*,
711 F.3d 1382 (Fed. Cir. 2013) .......... 16

*F.A.A. v. Cooper*,
566 U.S. 284 (2012) .......... 18

*FDIC v. Meyer*,
510 U.S. 471 (1994) .......... 17

*Fitzgerald v. Hampton*,
467 F.2d 755 (D.C. Cir. 1972) .......... 20

*Gandola v. FTC*,
773 F.2d 308 (Fed. Cir. 1985) .......... 10, 18, 20

*Horne v. MSPB*,
684 F.2d 155 (D.C. Cir. 1982) .......... 20

*Huber v. MSPB*,
793 F.2d 284 (Fed. Cir. 1986) .......... 10

*In re Baxter Int'l, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012) .......... 17

*James v. Von Zemenszky*,
284 F.3d 1310 (Fed. Cir. 2002) .......... 10, 18

*Johnson v. Alexander*,
572 F.2d 1219 (8th Cir. 1978) .......... 26

*Keef v. United States*,
185 Ct. Cl. 454 (1968) .......... 24

*King v. St. Vincent Hosp.*,
502 U.S. 215 (1991) ... 34

*LeBlanc v. Great Am. Ins. Co.*,
6 F.3d 836 (1st Cir. 1993) ... 20

*Lippmann v. United States*,
127 Fed. Cl. 238 (2016) ... 5, 17

*Morissette v. United States*,
342 U.S. 246 (1952) ... 18

*Motto v. United States*,
360 F.2d 643 (Ct. Cl. 1966) ... 26

*Murphy v. United States*,
993 F.2d 871 (Fed. Cir. 1993) ... 25

*Roberts v. United States*,
151 Ct. Cl. 360 (1960) ... 26

*Romag Fasteners, Inc. v. Fossil, Inc.*,
866 F.3d 1330 (Fed. Cir. 2017) ... 18

*Rowker v. United States*,
650 F.2d 290 (Ct. Cl. 1980) ... 27

*Sanders v. Kohler Co.*,
641 F.3d 290 (8th Cir. 2011) ... 10, 19

*Sargisson v. United States*,
913 F.2d 918 (Fed. Cir. 1990) ... 23, 28

*Sherengos v. United States*,
214 Ct. Cl. 749 (1977) ... 28

*Smith v. City of Jackson*,
544 U.S. 228 (2005) ... 18

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ... 16, 17

*Spehr v. United States*,
51 Fed. Cl. 69 (2001),
*aff'd*, 49 F. App'x 303 (Fed. Cir. 2002)....24

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988).... 31, 34

*Vierrether v. United States*,
27 Fed. Cl. 357 (1992),
*aff'd,* 6 F.3d 786 (Fed. Cir. 1993)....23

*Washington v. Garrett*,
10 F.3d 1421 (9th Cir. 1993) ....20

*Welch v. Dep't of Army*,
323 F.3d 1042 (Fed. Cir. 2003) ....18

*Wilder v. MSPB*,
675 F.3d 1319 (Fed. Cir. 2012) ....26

**Statutes**

10 U.S.C. § 1169.... 5, 24

10 U.S.C. § 1174a.... passim

14 U.S.C. § 2307....4

14 U.S.C. § 357.... passim

37 U.S.C. § 204(a) ....8

5 U.S.C. § 3502(a) ....20

Pub. L. No. 114-120, 130 Stat. 27 (2017)....4

**Other Authorities**

Webster's Third New International Dictionary (unabridged) (1976)....30

## CERTIFICATE OF INTEREST

| 1. Full Name of Party Represented by me: | 2. Name of Real Party in interest represented by me: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party: |
|---|---|---|
| Tonia Tippins | None | None |
| Derrik Magnuson | | |
| George Holloway | | |
| Jennifer Rehberg | | |
| Glenda Smithleeth | | |
| M. Allen Bumgardner | | |

**4. The names of all law firms and the partners or associates who appeared for the party now represented by us in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:**

Kirkland & Ellis LLP: Ragan Naresh

**5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal, per Fed. Cir. R. 47.4(a) and 47.5(b):**

None/Not Applicable

**6. Required information under Fed. Cir. R. 47(a)(6), Fed. R. App. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy debtors and trustees):**

None/Not Applicable.

## STATEMENT OF RELATED CASES

No appeal has previously been taken from the lower court proceeding. Plaintiffs Tonia Tippins, Derrik Magnuson, George Holloway, Jennifer Rehberg, Glenda Smithleeth, M. Allen Bumgardner and their counsel are unaware of any related cases currently before this Court or any other court that will directly affect or be affected by this Court's decision.

Subsequent to the entry of judgment under Rule 54(b) of the Rules for the Court of Federal Claims, the Court of Federal Claims certified this case as a class action. Two hundred and thirty seven Coast Guard veterans have opted to join in the class action. The Court's decision in this case may affect the claims of these class members.

## PRELIMINARY STATEMENT

The issue in this appeal is straightforward: whether the Government can claim it has conducted a "reduction in force" by forcing six decorated Coast Guard senior enlisted servicemembers to retire through Career Retention Screening Panels (CRSP)—along with hundreds of others—when it did not eliminate their positions (and, in fact, promoted others to their positions) and did not do it to reduce the size of the Coast Guard. The Court of Federal Claims properly rejected the Government's "amorphous interpretation" of "reduction in force" as "includ[ing] a reduction in the body of persons, personnel, positions, troops, labor force, jobs, or billets, each at the unbridled discretion of the Coast Guard." Appx22. Instead, the Court of Federal Claims interpreted "reduction in force" in 14 U.S.C. § 357(j) to have the same meaning this Court and other courts have given that term in numerous cases in similar contexts: "the elimination of positions or jobs, not merely the separation of personnel." Appx8. CRSPs were not a reduction in force because, as the court found, "the CRSP was not intended to reduce the size of the Coast Guard." Appx23. And because the Coast Guard did not eliminate the positions or jobs of Plaintiffs, it violated § 357 by forcing them to retire without giving them the protection of an Enlisted Personnel Board.

The Government's arguments on appeal provide no basis to disturb that holding. The Government argues that a "reduction in force" is different in the military, but prior cases show that is not correct. The Government points to two dictionary definitions, but those actually reinforce the Court of Federal Claims decision that a reduction in force is the reduction in *size* of a military unit, not mere separation of personnel. The Government points to a different statute, 10 U.S.C. § 1174a, concerning voluntary separations in the military and which references maintaining consistency with a reduction in force and argues that this reference "informs" the interpretation of "reduction in force" in 14 U.S.C. § 357(j), but fails to provide any basis to support that argument. And the Government fails to wrestle with the fact that its interpretation of "reduction in force" as encompassing the mere discharge of personnel would eviscerate the protections that Congress provided in § 357 to Coast Guard enlisted servicemembers who had served the country for twenty or more years.

The Court of Federal Claims was correct in concluding that the CRSPs were not a reduction in force and that Plaintiffs were unlawfully forced to retire. This Court should affirm.

## STATEMENT OF THE ISSUES

1. Whether the Court of Federal Claims appropriately granted summary judgment to Plaintiffs that the Government violated their statutory rights by forcing

them to retire without providing an Enlisted Personnel Board where (1) the Government stated that the CRSPs were not conducting a reduction in force, (2) the CRSPs did not constitute a reduction in force under 14 U.S.C. § 357(j) because the panels were not reducing the number of positions in the Coast Guard and Plaintiffs' positions were filled by others after their forced retirement.

2. Whether the Court of Federal Claims abused its discretion in denying the Government's motion for reconsideration where the Government raised new arguments that it could have raised earlier.

## STATEMENT OF THE CASE

### A. The Government Used Career Retention Screening Panels To Forcibly Retire Plaintiffs

Plaintiffs Tonia Tippins, Derrick Magnuson, George Holloway, Jennifer Rehberg, Glenda Smithleeth, and M. Allen Bumgardner had each served honorably in the Coast Guard for more than twenty years and had reached senior enlisted ranks. Appx291-294; Appx308. Because of their long service to the nation, Plaintiffs were entitled to the protections of 14 U.S.C. § 357 (2012). Under § 357, the Government could not force servicemembers like Plaintiffs to retire unless it had their records reviewed by an Enlisted Personnel Board, which could recommend an enlisted member for involuntary retirement for only two reasons: (1) because the servicemember's performance was below standards, or (2) because of professional dereliction. 14 U.S.C. § 357(b). Section 357 also afforded servicemembers

significant procedural protections, including right to counsel, written notification of the reasons the servicemember was being considered for involuntary retirement, access to the full record, an opportunity to present rebuttal matters and appear before the Board, and an opportunity to appeal. 14 U.S.C. § 357(c), (f). These protections were undoubtedly important to the servicemembers, and they ensured that enlisted personnel who had devoted decades of their lives to the Coast Guard would not face arbitrary termination of their careers without meaningful due process protections. The Coast Guard could bypass these procedural rights only "[w]hen the Secretary orders a reduction in force." 14 U.S.C. § 357(j).[1]

Between 2013 and 2015, Plaintiffs were each forced to retire by CRSPs. Appx291-294; Appx308. It is undisputed that the CRSPs were not an Enlisted Personnel Board. Among the key differences, servicemembers being reviewed by the CRSPs were excluded from participating in the proceedings and were not permitted to know the reasons (if any) for their selection for involuntary retirement. Appx301; Appx312. Additionally, servicemembers selected for involuntary retirement could only appeal instances of "material error, newly discovered evidence, or the presence of improper documents in the member[']s personnel file."

---

[1] Section 357 is no longer in force. Subsection (j) was repealed in 2016. Coast Guard Authorization Act of 2015, Pub. L. No. 114-120, § 215, 130 Stat. 27, 45-46 (2017). The remainder of the statute was later amended and moved to 14 U.S.C. § 2307.

Appx260. Therefore, whether the Government violated § 357 in forcing Plaintiffs to retire turns on whether the CRSPs were conducting a reduction in force.

### B. Creation Of Career Retention Screening Panels

The Coast Guard first created the CRSPs in 2010. On August 13, 2010, the Commandant of the Coast Guard requested and received approval from the Secretary of Homeland Security ("Secretary") "to conduct an Active Duty Enlisted Career Retention Screening Panel in the fall of 2010." Appx74; *see Lippmann v. United States*, 127 Fed. Cl. 238, 241 (2016). The Commandant's memorandum stated that the CRSP was needed "to address high retention and its adverse impact on workforce flow." Appx74. The memorandum stated "[t]he legal authority to conduct such a panel derives from" 14 U.S.C. § 357(j) and 10 U.S.C. § 1169. *Id*. But the memorandum made no mention of a reduction in force. *See id*.

In fact, a few weeks before the Secretary approved the CRSP, the Coast Guard's Chief of the Office of Military Personnel, Captain Christopher Calhoun, told staff that "[t]his is not a RIF [Reduction In Force] and we need to ensure that it is not associated with a RIF. Body to billet we are doing fine, but upward mobility and flow continues to be a problem and will pose bigger problems down the road."[2]

---

[2] In opposing Plaintiffs' motion for summary judgment, the Government submitted a declaration from Captain Calhoun, who said his emails were "about communication[] strategy, not legal authority, because [he] understood at the time that the legal authority for the proposed 2010 CRSP would be as a reduction in force under 14 U.S.C. § 357(j)." Appx223. The Government then refused to make

Appx108. Captain Calhoun also described it as "key[]" that the CRSP was "designed and messaged as a flow stimulating tool and not a RIF tool." Appx110. A draft "Frequently Asked Questions" document from that same time period answered the question "Why didn't the Commandant's memo use the term 'reduction in force'?" by stating "The term 'reduction in force' would have been misleading because the CRSP was not intended to reduce the overall size of the force." Appx113.

From 2011-2014, the Coast Guard again sought and received authorization from the Secretary to hold CRSPs. Appx86-94. These memoranda cited 14 U.S.C. § 357(j) as the legal authority for the CRSPs, but the memoranda never characterized the CRSPs as conducting a reduction in force. In fact, the memoranda in 2012–2014 admit that the Coast Guard did not use the term reduction in force with respect to the CRSP "[i]n order to avoid creating confusion in the fleet." Appx88, Appx90, Appx92.

The Government admits that the "Coast Guard generally did not eliminate the billets that were occupied by the enlisted service members in higher grades (E-7 and

---

Captain Calhoun available for a deposition. Appx243-245; Appx248-252. The trial court declined to strike Captain Calhoun's declaration and instead interpreted it as merely indicating his emails reflected a communications strategy but that he did not have legal or policymaking authority. Appx10 n.6; Appx16. But the trial court also called it "disquieting" the Government's indication it was purposefully misleading its own enlisted personnel. Appx22.

above) who were selected for involuntary retirement during the [2010-2014] CRSPs."[3] Appx124. The Government admits that the CRSPs were "not necessitated by either (1) a reduction in the Congressional authorization for total force strength in the Coast Guard, or (2) a reduction in the authorized number of enlisted billets in higher grades (E-7 and above)." Appx97-101, Nos. 5, 7, 9, 11, 13. The Government further admits that for each year between 2011–2014, the Secretary "did not separately and specifically order the elimination of particular enlisted billets (or positions) in the Coast Guard." *Id.* at Nos. 4, 6, 8, 10, 12 (emphases added). The positions and billets held by named Plaintiffs Tonia Tippins, Derrik Magnuson, George Holloway, Jennifer Rehberg, Glenda Smithleeth, and M. Allen Bumgardner before their involuntary retirements through the CRSP were not eliminated after their involuntary retirements; different Coast Guard personnel filled these positions after Plaintiffs were forced to retire. Appx102-103.

Plaintiffs were among 825 senior servicemembers that the Coast Guard involuntarily retired during the 2010–2014 CRSPs. *See* Appx123, Appx125.

---

[3] A "billet" is a position in the Coast Guard. *See* https://www.dcms.uscg.mil/Our-Organization/Assistant-Commandant-for-Human-Resources-CG-1/Health-Safety-and-Work-Life-CG-11/Office-of-Work-Life-CG-111/Sea-Legs/Coast-Guard-Glossary/.

### C. Procedural Background

#### 1. Plaintiff's Complaint and Discovery

On June 27, 2018, Plaintiffs Tonia Tippins, Derrick Magnuson, George Holloway filed a complaint in the Court of Federal Claims under the Military Pay Act, 37 U.S.C. § 204(a), on behalf of themselves and a class of similarly situated service members retired by the 2012, 2013, and 2014 CRSPs, alleging that their involuntary retirements violated 14 U.S.C. § 357(j). On November 18, 2018, Plaintiffs Jennifer Rehberg, Glenda Smithleeth, and M. Allen Bumgardner joined the case through filing of an amended complaint.

The Court of Federal Claims rejected the Government's attempt to limit review based on the Government's self-selected "administrative record": "As plaintiffs are challenging the legality of the CRSPs for the first time, and neither the Coast Guard nor a military corrections board has considered this issue, there is no appropriate administrative record for the Court to review." *See* Appx77 (internal citations omitted). The court recognized that a supplemental factual record may need to be developed in discovery on the issue of the Coast Guard's "current and past interpretation of 'reduction in force' in accordance with 14 U.S.C. § 357. *Id.* On August 10, 2020, the court ruled that "additional discovery is warranted to determine the Coast Guard's interpretation of 'reduction in force.'" Appx83. The Court of Federal Claims also noted that "insight into the decision-making process

that resulted in a public messaging campaign emphasizing that the CRSP was not a reduction in force—a message directly contrary to the position the United States now takes—is likely to be relevant to the Plaintiffs' claims and proportional to the needs of the case." *Id.* After further discussions between the parties, the Government provided responses to requests for admission and interrogatories that contained information about CRSPs not present in what the Government had submitted as the administrative record.

2. Summary Judgment

On July 6, 2021, the Court of Federal Claims granted Plaintiffs' motion for summary judgment and denied the Government's cross motion for summary judgment. Appx2-17. The court explained that "[t]he question at the heart of this dispute appears simple enough: were the CRSPs lawfully convened as part of a 'reduction in force' pursuant to 14 U.S.C. § 357(j)?" Appx2. Addressing that question, the court concluded that the "statute is unambiguous" and held that a "'reduction in force' is the elimination of positions or jobs, not merely the separation of personnel." Appx3; Appx8. The court rejected the Government's argument that "Congress intended to assign 'reduction in force' a 'flexible' definition depending on the circumstances in which § 357(j) was invoked." Appx7.

First, the Court of Federal Claims considered the ordinary meaning of the phrase "reduction in force." Appx8. The court noted that although this Court had

not interpreted the "reduction in force" clause of § 357(j), it has defined reduction in force in other circumstances and "has made clear that 'a reduction in force' necessarily involves the elimination of positions as a prerequisite." Appx8 (citing *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002); *Huber v. MSPB*, 793 F.2d 284, 286 (Fed. Cir. 1986); *Gandola v. FTC*, 773 F.2d 308, 310 (Fed. Cir. 1985)). The court also considered how other courts had interpreted "reduction in force" in the context of statutes governing civilian workforce protections and observed those courts concluded a reduction in force occurs where positions are eliminated, not where the eliminated employee is replaced. Appx8 (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990); *Sanders v. Kohler Co.*, 641 F.3d 290, 294 (8th Cir. 2011)).

Second, the Court of Federal Claims considered the cases the Government cited as supporting a "flexible definition to the phrase 'reduction in force'" and concluded that they not only did not support the Government's broad definition but actually supported Plaintiffs' reading. Appx8-10.

Third, the Court of Federal Claims observed that "the Coast Guard's public messaging campaign around the CRSPs sharply undercuts the United States' argument that the involuntary retirements were actually a reduction in force." Appx10. The court pointed to the 2010 email from Captain Calhoun, the Coast Guard's Chief of Military Personnel, who stated that the CRSPs were "not a RIF and

we need to ensure that it is not associated with a RIF." Appx108; Appx10. The court also cited to a draft Frequently Asked Questions document from the same timeframe, which explained that the Commandant's memo did not "use the term 'reduction in force'" because it "would have been misleading because the CRSP was not intended to reduce the overall size of the force." Appx113; Appx10.

Fourth, the Court of Federal Claims rejected the Government's argument that it could not review the Coast Guard's personnel actions. Appx10-12. The court explained that it was "the Court's role to interpret § 357," that the court was interpreting the statutory phrase "reduction in force" consistent with how numerous federal appellate courts had interpreted that phrase, and that "[i]n making this determination, the Court offers no opinion on the Coast Guard's policy objectives in shaping its force." Appx12.

Finally, although the court concluded that the statutory language "reduction in force" was not ambiguous, the court also addressed whether the Government's interpretation of § 357(j) would be entitled to deference if the statute were ambiguous. Appx12-16. The court rejected the Government's argument that the mere citation of § 357(j) in the Secretary's memoranda establishing CRSP constituted an interpretation entitled to deference. Appx14. The court explained that "there is no evidence of a 'considered judgment' by the Coast Guard, and the character of the memoranda establishing the CRSPs is conclusory, not

interpretative." Appx14. The court therefore concluded that "even if § 357(j) were ambiguous, the Court would be required to 'impose its own construction on the statute' because the Coast Guard failed to offer an interpretation that warrants deference." Appx16 (citing *Chevron, USA., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).

3. Denial of Government's Request for Reconsideration

On December 8, 2021, the Court of Federal Claims denied the Government's motion to reconsider the order granting summary judgment in favor of Plaintiffs. Appx18-26. The Government did not request reconsideration of the court's alternative holding that even if "reduction in force" in § 357 was ambiguous, the Coast Guard had not offered an interpretation that was entitled to *Chevron* deference, but instead focused on the court's holding on the plain meaning of "reduction in force." Appx18-20. The court found the Government's arguments "individually and collectively … unconvincing." Appx22. The Government argued that the court's interpretation was inconsistent with the Government's alternative plain language interpretation based on a dictionary definition, but the court rejected this argument as "urging the Court to go dictionary shopping." Appx21. The court rejected the Government's argument that it was inappropriate to look at this Court's interpretation of the phrase "reduction in force" in context of MSPB appeals and OPM regulations because "[t]he Federal Circuit's usage, though not involving RIFs

within a military context, remains useful in the vacuum created by the complete absence of a definition unique to 14 U.S.C. § 357." Appx22. The court also rejected the Government's argument that the court should not have relied on the decision in *Barnes*, 896 F.2d at 1465, noting that the Government itself had relied on *Barnes* to interpret "reduction in force" in a prior case involving CRSPs. Appx22 (comparing the Government's reconsideration arguments with the Government's motion to dismiss in *Lippmann v. United States*, Case No. 15-192, ECF No. 10 (Fed.Cl.)). Finally, the court rejected the Government's reliance on 10 U.S.C. § 1174a as supporting its interpretation, noting that the Government raised this argument "for the first time" in its motion for reconsideration and that Section 1174a was not relevant to the interpretation of § 357(j) in any event. Appx22. And the court "again note[d] that, while not particularly consequential at summary judgment, the Coast Guard's own contemporaneous statements sharply undercut the position it now stakes in seeking reconsideration." Appx22. The court explained that the Government's attempts to now "disavow these earlier statements to its service members" carries little weight and that "[i]f in fact, the Coast Guard was purposefully misleading its own enlisted personnel, as the United States seems to now suggest, such efforts are disquieting." Appx22 n.6.

The Court of Federal Claims ordered the Coast Guard to correct the military records for Plaintiffs and entered judgment pursuant to Rule 54(b) of the Rules for the Court of Federal Claims. Appx26. The United States' appeal followed.

4. Class Certification Proceedings

On March 8, 2022, Plaintiffs filed a motion to certify the class of similarly situated plaintiffs, which the United States did not oppose. *Tippins v. United States,* Case No. 1:18-cv-00923-LAS (Fed. Cl.) ("*Tippins v. USA*"), ECF No. 100. On March 14, 2022, the Court of Federal Claims granted the motion to certify the class. *Id.,* ECF No. 101. Ultimately, 237 Coast Guard veterans opted to join as members of the class. *Id.,* ECF No. 107. The trial court stayed further proceedings related to class relief pending the outcome of this appeal. *See Id.,* ECF No. 109.

## SUMMARY OF ARGUMENT

The Court of Federal Claims correctly concluded that "reduction in force" in § 357(j) means the elimination of positions or jobs, not merely the separation of personnel. This conclusion is grounded in decisions of this Court and other federal appellate courts, which have construed "reduction in force" in similar contexts. These decisions make clear that a reduction in force does not occur where an employer fills the position of the discharged employee with someone else. That is what happened here. Plaintiffs' positions were filed by others after they were forced to retire by the CRSPs.

None of the government's arguments justify a different construction of the phrase "reduction in force" in § 357(j). First, the military also conducts reduction in force when it reduces its overall size and number of positions, such as when it responds to budget restrictions or a reduction in overall end-strength. But the CRSPs did not result in a reduction in the total number of personnel, and the Coast Guard acknowledged that the CRSP was not intended to reduce the overall size of the force. Second, the government's dictionary definitions do not support construing reduction in force to mean discharges of individual military members. Rather, those dictionaries indicate that a reduction in force is the reduction in size of the military units by elimination of personnel. Third, the government's reliance on 10 U.S.C. § 1174a, which it first cited in its motion for reconsideration, is misplaced. Section 1174a does not define reduction in force, but rather requires the military to ensure that servicemembers subject to involuntary reductions are provided the opportunity to take advantage of any voluntary separation program. Fourth, the government's interpretation of reduction in force as encompassing actions taken against individual servicemembers would allow the government to skirt the very protections that § 357 was intended to provide to enlisted Coast Guard servicemembers with twenty or more years of service.

# ARGUMENT

## I. Standard Of Review

This Court reviews a grant of summary judgment by the Court of Federal Claims de novo. *Anderson v. United States*, 23 F.4th 1357, 1361 (Fed. Cir. 2022). This Court reviews the trial court's decision to deny reconsideration for an abuse of discretion. *Entergy Nuclear FitzPatrick, LLC v. United States*, 711 F.3d 1382, 1386 (Fed. Cir. 2013).

## II. The Court Should Affirm The Judgment Of The Court Of Federal Claims That The CRSPs Did Not Constitute A Reduction In Force

The Court of Federal Claims held that the "plain and unambiguous" phrase "reduction in force" involves "the elimination of positions or jobs, not merely the separation of personnel."[4] Appx8; Appx12. That holding is consistent with standard rules for statutory construction and how this Court and other federal appellate courts have construed the phrase in related contexts. The Court of Federal Claims therefore concluded that because "the Coast Guard's involuntary retirement of Plaintiffs

---

[4] The Government had argued before the Court of Federal Claims that "reduction in force" in § 357(j) was ambiguous and that the Government's definition of "reduction in force" was entitled to *Chevron* deference. Appx12. The court rejected that argument and concluded that "the Coast Guard failed to offer an interpretation that warrants deference." Appx16; *see also* Appx14 ("[T]he Coast Guard memoranda are not an interpretation" of § 357(j)). The Government has not raised that argument (or any argument based on *Chevron* or other deference) on appeal and has therefore waived it. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

through CRSPs was not part of a 'reduction in force' under § 357(j)," it was "contrary to law." Appx7. The United States offers no arguments that justify disrupting the trial court's ruling. For the reasons set forth below, the Court should affirm the judgment of the Court of Federal Claims.[5]

### A. "Reduction In Force" Means Reduction in Positions, Not Individuals

Because "reduction in force" has not been given a specialized definition in § 357(j), it must be construed "in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). That ordinary meaning is informed by how that term has been defined in similar contexts. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019) ("This Court does not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes."); *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1335 (Fed. Cir.

[5] The Government states in a footnote in its factual background that the Court of Federal Claims erred by deciding this case on a summary judgment standard. Appellant Br. 8 n. 4. The Government never develops that argument in its brief. *See SmithKline Beecham*, 439 F.3d at 1320 ("[A]rguments raised in footnotes are not preserved."); *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (concluding that arguments raised only in the "background of [an] opening brief" are waived). Regardless, the Court of Federal Claims properly rejected the Government's argument that Plaintiffs' challenge to the legality of the CRSPs was limited to the record the Government created through these unlawful procedures. Appx76-77; Appx79-84; *see also Lippmann v. United States*, 127 Fed. Cl. 238, 250 (2016) (holding that a servicemembers challenge to the legality of CRSP would be reviewed de novo).

2017) ("'[W]hen Congress uses the same language in two statutes having similar purposes, … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.'") (quoting *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005)). In addition, "it is a cardinal rule of statutory construction that, when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." *F.A.A. v. Cooper*, 566 U.S. 284, 291-292 (2012) (quotation omitted); *see also Morissette v. United States*, 342 U.S. 246, 263 (1952).

The Federal Circuit has explained that "reduction in force" means an "administrative procedure by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions." *Welch v. Dep't of Army*, 323 F.3d 1042, 1046 (Fed. Cir. 2003) (quoting *James*, 284 F.3d at 1314). The controlling Federal Circuit precedent does not just outline what a reduction in force ***is***; it also explains what a reduction in force is ***not***. Specifically, a reduction in force is "***not*** an adverse action against a particular employee, but is directed solely at a ***position*** within an agency." *Id.* (quoting *James*, 284 F.3d at 1314) (emphasis added); *see also Gandola*, 773 F.2d at 312 ("A reduction in force may not be used as a disguised adverse action to remove or demote a particular employee."). As explained this Court, a reduction in force necessarily implicates the elimination of ***positions,*** not ***individuals***.

This meaning is consistent with how other courts have defined a reduction in force. For example, in *Barnes*, the Sixth Circuit sought to "clarify what constitutes a true work force reduction case," in deciding an age discrimination case brought under the Age Discrimination in Employment Act ("ADEA"). 896 F.2d at 1465. As the *Barnes* court explained, a "true work force reduction" (*i.e.*, a reduction in force) occurs when "business considerations cause an employer to eliminate one or more positions within the company." *Id*. Thus, an employee's elimination does not qualify as a work force reduction "when he or she is replaced after his or her discharge." *Id.* But if an employer eliminates a position and redistributes the responsibilities to other positions without replacing the employee in the eliminated position, a reduction in force has occurred. *See id.* ("[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work."). The relevant inquiry is whether the ***position*** itself was eliminated, not the individual employee. And that makes sense: an employer does not "reduce" its workforce when it retains the same number of employees. When an employee leaves and a new employee fills the same position, the workforce remains whole. *See Sanders*, 641 F.3d at 294 ("When a company fires one worker and replaces him with another, there is no net loss in the number of employees and no 'reduction in force' as the term is commonly understood.").

Other federal appellate courts have also recognized that a reduction in force involves elimination of positions and is not merely directed at firing particular individuals. The D.C. Circuit has explained that "a RIF cannot be used to disguise an individual personnel action." *Horne v. MSPB*, 684 F.2d 155, 159 (D.C. Cir. 1982) (citing *Fitzgerald v. Hampton*, 467 F.2d 755, 758 (D.C. Cir. 1972)). The D.C. Circuit agreed that "a bona fide reduction in force situation existed" where an employee's function "was abolished." *Enos v. Macy*, 321 F.2d 747, 748 (D.C. Cir. 1963). Agreeing with the Sixth Circuit, the First Circuit stated "[i]t is true that 'an employee is not eliminated as a part of a work force reduction when he or she is replaced after his or her discharge.'" *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 846 (1st Cir. 1993) (quoting *Barnes*, 896 F.2d at 1457). And the Ninth Circuit agreed with this Court that "[a] reduction in force may not be used as a disguise for an adverse action to remove or demote a particular employee." *Washington v. Garrett*, 10 F.3d 1421, 1429 (9th Cir. 1993) (citing *Gandola*, 773 F.2d at 312), *as amended on denial of reh'g* (Jan. 26, 1994).

The Government argues that Congress's substitution of the term "reduction in force" for the term "reduction in personnel" when it recodified 5 U.S.C. § 3502(a) somehow is contrary to the Court of Federal Claims interpretation that a "reduction in force" is not merely the separation of personnel. Appellant Br. 28-29. But the Government cites nothing that would support "reduction in personnel" as

encompassing the Government's definition that such a reduction occurs even where positions are not eliminated. Moreover, the Government fails to explain why this superseded "reduction in personnel" language in a federal civil service statute would trump the collective interpretation of the meaning of "reduction in force" by this Court and other federal appellate courts.

The CRSP is not a reduction in force as this Court and other federal appellate courts have consistently understood the term. The CRSPs had the *explicit aim* of removing certain senior enlisted servicemembers *so they could be replaced by others*, as demonstrated by the Coast Guard's statement that the CRSPs were aimed to reshape the enlisted ranks to allow for improved upward mobility. *See* Appx86 (noting CRSP designed to stimulate workforce flow and improve enlisted advancements); Appx85 (describing 2011 and 2012 CRSPs as a "performance-based enlisted workforce management tool"). In fact, the Coast Guard admits that each of the Plaintiffs' positions were not eliminated after their forced retirement. Appx102-103. Plaintiffs were simply replaced in their jobs by others. That is the antithesis of a reduction in force that eliminates *positions*, rather than individual *persons*.

Despite the consistent judicial interpretations of reduction in force as involving reduction in positions and not actions taken against individuals, the Government nonetheless argues that a reduction in force may involve "discharges of individual military members." Appellant Br. 11, 16. The Government makes three

arguments to support this position: (1) that reductions in force in the military context are different than reductions in force in the civilian context, (2) that dictionary definitions support a reduction in force meaning a reduction in personnel, and (3) that 10 U.S.C. § 1174a "reinforces" the Government's interpretation because it states that any category established for a voluntary special separation benefits program must be consistent with the categories for a "reduction in force." None of these arguments have merit.

### B. A Reduction in Force in the Military Also Involves Reduction in Positions

The Government argues that "reduction in force" must be interpreted differently for the Coast Guard because "[t]he military cannot reduce the size of the enlisted workforce (or any portion thereof) by eliminating positions because military members serve on enlistment contracts and therefore remain in the force regardless of whether any particular position exists." Appellant Br. 12; *see id*. at 18-19 (arguing enlisted members "Serve In Grades, Not Positions"). This is legally and factually wrong.

The total number of positions in a military service depends on appropriations by Congress, and military services—including the Coast Guard—have conducted reductions in force where there are more servicemembers than authorized end strength. For instance, in the late 1980s, the Coast Guard instituted an "involuntary reduction in force … program" in which it "reduc[ed] its personnel" due to "a budget

shortfall." *Vierrether v. United States*, 27 Fed. Cl. 357, 359 (1992), *aff'd,* 6 F.3d 786 (Fed. Cir. 1993). Likewise, in 2011, the Navy responded to "future planned end strength controls" by initiating a process to identify several thousand sailors for separation. *Allphin v. United States*, 758 F.3d 1336, 1340 (Fed. Cir. 2014). The Air Force has also conducted reductions in force to involuntarily separate servicemembers in response to congressional reductions in end strength. *See Berkley v. United States*, 287 F.3d 1076, 1082 & n.2 (Fed. Cir. 2002) (noting that 1,595 officers were selected in 1992 for separation by a reduction in force board "in response to congressionally mandated reductions in the Armed Forces"); *Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990) ("The reason for Sargisson's release from active duty was a reduction in manpower requirements.").

Here, however, the Government admits that the Coast Guard was not reducing the total number of personnel for Congressional authorization or end-strength reasons. Appx98-101. To the contrary, prior to establishment of the CRSP, the Coast Guard's Chief of Personnel acknowledged that "body to billet we are doing fine." Appx108. And the Coast Guard recognized that describing the CRSP as a reduction in force "would have been misleading because the CRSP was not intended to reduce the overall size of the force." Appx113.

Nor is the Government correct that a military member serving on an enlistment contract remains in the force regardless of whether any particular position

exits. Appellant Br. 12. "Enlisted members of the armed services do not have an unfettered right to serve until the end of their enlistment terms. Rather, every branch of the armed services has the statutory discretion to terminate a term of enlistment early and involuntarily if it is in the interest of the respective branch to do so and applicable procedures are followed." *Spehr v. United States*, 51 Fed. Cl. 69, 82 (2001) (Citing 10 U.S.C. § 1169), *aff'd*, 49 F. App'x 303 (Fed. Cir. 2002); *Keef v. United States*, 185 Ct. Cl. 454, 463-64 (1968) ("We have repeatedly opined that a serviceman does not have a right to remain in the service until the end of his enlistment."). The difference here is 14 U.S.C. § 357, in which Congress protected enlisted Coast Guard servicemembers with twenty or more years of service from being involuntary retired without cause *unless* there was a reduction in force.

The Government's argument that it was "error" for the Court to assume statutes governing reductions in force in a civilian context have a "similar purpose" to military statutes, Appellant Br. 24, ignores the fact that the Coast Guard itself has argued several times before this court and in its own administrative bodies that non-military definitions and regulations regarding reductions in force are relevant to the definition of "reduction in force" in § 357(j)—regardless of any perceived differences between civilian and military employment. *See Lippmann*, ECF 10 at 22 (citing private-sector reduction in force case to support interpretation of § 357(j)); Appx254 (*In re Winbourne*, BCMR Dkt. No. 2011–130) at 935 (citing *Barnes* for

the proposition that "'a reduction in force situation occurs when business considerations cause an employer to eliminate one or more positions within the company.'"); Appx271 (*In re Avelsgard*, BCMR Dkt. No. 2013–153) at 959 (citing *Sanders* and explaining that "[n]umerous cases stand for the proposition that when an employee is replaced in his or her position, that is not a 'reduction in force.'"). The Government's litigation-driven change of positions that the meaning of reduction in force in civilian statutes is irrelevant to interpretation of § 357(j) should be rejected.

To support its argument, Defendant cherry-picks *Allphin*'s quote from *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993) because it mentions a reduction in force. Appellant Br. at 25. But *Murphy* does not address how to define reduction in force, but rather only focuses on whether the court had jurisdiction to evaluate the Air Force's discretionary decision to retire a particular service member. 993 F.3d at 873-74.

Nor does the litany of cases cited by the Government for the unremarkable proposition that that there are differences between the statutory schemes governing military service members and civilian employees support construing "reduction in force" to have a different meaning. Appellant Br. 24-25 (citing cases). The Government's snippets from these cases ignore their actual context: None of these cases has anything to do with whether a reduction in force would mean something

different in the military than it does in the civilian context. *See Wilder v. MSPB*, 675 F.3d 1319, 1322 (Fed. Cir. 2012) (addressing whether an OPM regulation that defined "current continuous service" as limited to "Federal civilian employment" was reasonable under *Chevron*); *Cornetta v. United States*, 851 F.2d 1372, 1377 (Fed. Cir. 1988) (stating that Court of Claims precedent "recognized differences between civilian and military service that 'must be taken account of' *when applying the laches doctrine*") (emphasis added) (citation omitted); *Johnson v. Alexander*, 572 F.2d 1219, 1224 (8th Cir. 1978) (observed that there are material differences between military service and civilian employment in holding that "neither Title VII nor its standards are applicable to persons who enlist or apply for enlistment" in the military); *Motto v. United States*, 360 F.2d 643, 646-47 (Ct. Cl. 1966) (noting that a "civil office is not the same as a military office" but nonetheless concluding that, like a civilian employee, the backpay a military servicemember would receive for unlawful separation had to be offset by civilian earnings after that separation); *Roberts v. United States*, 151 Ct. Cl. 360, 364 (1960) (addressing claim accrual for purposes of the statute of limitations in a military retired pay case and observing that another recently-decided case from the court regarding statutes of limitations was in the context of a civilian reduction in force rather military retirement). None of these cases bolster the Government's argument that it was wrong to look at civilian cases in determining the meaning of reduction in force.

The rest of the cases cited by the United States fare no better; they do not grapple with the plain meaning of "reduction in force" in § 357(j) or otherwise. None of those cases turned on whether there was a valid "reduction in force." Instead, each case merely accepts that a reduction in force took place in order to analyze other legal issues specific to each individual plaintiff's dismissal (rather than challenges to the reduction in force scheme as a whole). For example, in *Berkley*, the Federal Circuit mentions that retirements were conducted pursuant to a "reduction in force" but does not address the plain meaning of the term *Murphy* because that was not relevant to the equal protection claims at issue. 287 F.3d at 1081, 1084-91; *Alvin v. United States*, 50 Fed. Cl. 295, 296-97 (2001) (same); *Baker v. United States*, 34 Fed. Cl. 645, 648 (1995) (same), *vacated by Baker v. United States*, 127 F.3d 1081 (Fed. Cir. 1997); *see also Rowker v. United States*, 650 F.2d 290, 290 (Ct. Cl. 1980) (noting that plaintiff was retired pursuant to a reduction in force before addressing his disability-related claims); *Davidson v. United States*, 650 F.2d 285, 285 (Ct. Cl. 1980) (same); *Curry v. United States*, 609 F.2d 980, 981-84 (Ct. Cl. 1979) (noting that plaintiff was set to be retired pursuant to a reduction in force but was discharged on the same day for administrative reasons, and then addressing plaintiff's equal protection challenges to his administrative discharge); *Doneghy v. United States*, 618 F.2d 121, 121 (Ct. Cl. 1979) (noting that plaintiff was retired pursuant to a reduction in force before addressing plaintiff's substantive

challenges to his individual dismissal); *Sherengos v. United States*, 214 Ct. Cl. 749, 749-50 (1977) (noting that plaintiff was retired pursuant to a reduction in force before addressing motion to dismiss on statute of limitations grounds); *Crumley v. United States*, 133 Fed. Cl. 607, 609-10, 612-13 (2017) (noting that plaintiff was retired pursuant to a reduction in force before addressing plaintiff's procedural challenge to the Air Force's review of his records), *aff'd,* 738 F. App'x 1020 (Fed. Cir. 2018); *Berkley v. United States*, 59 Fed. Cl. 675, 677-78, 682-711 (2004) (noting that plaintiff class members were retired pursuant to a reduction in force before addressing the fairness of a settlement agreement between plaintiffs and the United States regarding equal protection claims).

As another example, *Sargisson* mentions the Air Force regulations governing "reduction[s] in manpower requirements,"[6] but focuses the analysis on whether the plaintiff's specific retirement was permissible within the Air Force's broad discretion (similar to the Federal Circuit's analysis in *Murphy*). 913 F.2d at 921-23; *see also Anderson v. United States*, 111 Fed. Cl. 572, 583 (2013) (citing *Sargisson* and *Murphy* for the proposition that "[a] challenge to the merits of a discharge alleged to be wrongful is a nonjusticiable controversy under binding precedent in this circuit," not regarding the schema for reductions in force). None of the military

[6] Notably, *Sargisson* does not use, let alone analyze, the term "reduction in force."

cases defined "reduction in force" to mean something different than its common understanding as reflected in the numerous federal appellate decisions involving reduction in force under other statutes.

### C. The Government's Dictionaries Do Not Support Interpreting Reduction In Force As Discharging Individual Servicemembers

The Government points to two dictionary definitions as "demonstrat[ing] that the plain meaning of 'reduction in force' may include [1] a reduction in the size of military personnel units and [2] *discharges of individual military members*." Appellant Br. 16 (brackets and emphasis added).

The first point is undisputed and actually refutes the Government's argument that the CRSP was a reduction in force. A reduction in force *is* the reduction in size of the military personnel units--by the elimination of positions in the military. That is consistent with how the Court of Federal Claims interpreted a reduction in force and why it concluded the CRSP was not a reduction in force: "the CRSP was not intended to reduce the size of the Coast Guard." Appx23. The court noted that the Coast Guard's "messaging campaign reflected the reality that if the Coast Guard described the CRSPs as part of a RIF, it would have been misleading 'because the CRSP was not intended to reduce the overall size of the force.'" Appx10 (quoting Appx113. The Government admitted that that the CRSPs were "not necessitated by either (1) a reduction in the Congressional authorization for total force strength in the Coast Guard, or (2) a reduction in the authorized number of enlisted billets in

higher grades (E-7 and above)." Appx98-101. And the Government further admitted that the Secretary "did not separately and specifically order the elimination of particular enlisted billets (or positions) in the Coast Guard." Appx97-101. Thus, even under the Government's definition, the CRSP was not a reduction in force because it was not a reduction in the body, or size, of the force. By the Government's own admission, there was no "reduction in the 'troops' that [were] 'available.'" Appellant Br. 16.

The dictionaries do not support the Government's second point—that a reduction in force can be "discharges of individual military members." Appellant Br. 17. The Government appears to base that argument on the definition of the verb "rif" in the Random House dictionary. *Id.* (citing Appx73). But not only is this a verb—i.e., "to rif"—and not the definition of what is a "reduction in force," the Random House dictionary notes this is an "informal" definition. Moreover, the Random House dictionary describes the verb to "rif" someone as "esp. part of an economy program"—i.e., the widely accepted understanding of reduction in force.[7] *See Barnes*, 896 F.2d at 1465 ("A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within

[7] This is consistent with the definition in Webster's Third New International Dictionary, which defines RIF as "the act of dismissing a person esp. from government employment for reasons of economy." Webster's Third New International Dictionary (unabridged), at 1953 (1976).

the company.”). These definitions do not support the Government’s position that a reduction in force can be defined as merely the discharge of individual servicemembers.

Accordingly, the Court of Federal Claims properly rejected the Government’s urging that the court “go dictionary shopping.” Appx21. Instead, rather than relying on the Government’s “favored dictionary,” the court considered the phrase “reduction in force” as unambiguous in its entirety, rather than its subparts. Appx21 (citing *United Sav. Ass’n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (“A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme because the same terminology is used elsewhere in a context that makes its meaning clear[.]”)).

### D. The Voluntary Special Separation Benefits Program of 10 U.S.C. § 1174a Does Not Support The Government’s Interpretation

As additional support for its interpretation, the Government points to 10 U.S.C. § 1174a, which authorizes military departments to establish special separation benefits programs for voluntarily separating servicemembers from active duty. Appellant Br. 19-20. Notably, the Government first raised arguments based on this statute in its motion for reconsideration. Appx22.

The Government argues that § 1174a “helps to illuminate the plain meaning of § 357(j)” because it “uses the term ‘reduction in force’ in the context of an incentive program for separating enlisted members in certain grades or with certain

years of service, without any requirement to eliminate positions." Appellant Br. 19-20. But the Court of Federal Claims correctly concluded that § 1174a does not inform the construction of § 357(j). Appx22.

To start, the Government's attempt to link § 1174a with § 357(j) (Appellant Br. 21-22) fails at the outset for the basic reason that the statutes, by their own terms, do not overlap. Section 1174a is limited to servicemembers with *less* than 20 years of service. 10 U.S.C. § 1174a(c)(3). Section 357(j) is limited to Coast Guard enlisted members with *more* than 20 years of service.

More fundamentally, § 1174a is not about reductions in force. As the court observed, § 1174a establishes *voluntary* separation programs. *Id.*; ("An eligible member of the armed forces *may request* separation under the program.") (emphasis added). The Government nonetheless tries to link the statute to how to construe reduction in force by pointing to §1174a(e), which allows the military to limit these voluntary separation programs to specified categories "to reduce the number of members in certain grades, the number of members who have completed a certain number of years of active service, or the number of members who possess certain military skills or are serving in designated competitive categories." 10 U.S.C. § 1174a(e)(1). The next paragraph then states that any category established "shall be consistent with the categories applicable" to servicemembers "under the voluntary separation incentive program under section 1175" (which established a

program for voluntary transfer from active duty to the reserves) "or any other program established by law or by that Secretary for the involuntary separation of such members in the administration of a reduction in force." *Id.* § 1174a(e)(2). Based on this, the Government argues the following syllogism: Because (1) Congress authorized the special separation benefit programs to use categories that reduce enlisted members by grades, years of service, or skills, and (2) Congress provided the categories of the special separation benefit program must be consistent with categories in a reduction in force, then (3) "it is manifest that Congress understood that reductions in categories of enlisted personnel fall within the plain meaning of a reduction in force under section 357(j)." Appellant Br. 21. But the logic is flawed because the conclusion does not follow from the premise. The point of requiring the categories of the *voluntary* special separation benefit program be consistent with the categories for *voluntary* transfer to the reserves or an *involuntary* separation pursuant to a reduction in force is that Congress wanted to ensure servicemembers were being treated consistently. Section 1174a thus does not address what qualifies as a reduction in force, but prohibits the military from subjecting one category of servicemembers to involuntary separations through reductions in force while providing another category of servicemembers incentives to leave the service voluntarily. Section 1174a simply has no relevance to defining reduction in force.

### E. The Government's Interpretation Is Inconsistent With § 357 As A Whole

Finally, the Court of Federal Claims properly recognized that the Government's interpretation of "reduction in force" in § 357(j) is inconsistent with the entirety of § 357, which was to provide long-serving enlisted Coast Guard servicemembers with procedural protections against forced retirement. Appx23-24. "Statutory construction … is a holistic endeavor," and even where a statutory provision could have multiple meanings, a meaning may be clarified "because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav, Ass'n of Tex.*, 484 U.S. at 371; *see also King v. St. Vincent Hosp.*, 502 U.S. 215, 221 (1991) ("[T]he meaning of statutory language, plain or not, depends on context."). Adopting the Government's interpretation of "reduction in force" in § 357(j) as allowing the Government to select senior enlisted servicemembers for retirement for any reason would render the protections in § 357 of an Enlisted Personnel Board a nullity. After all, if § 357(j) allowed the Coast Guard to select individual senior servicemembers for retirement just because the Coast Guard wants to "reduce" them, then these servicemembers have lost the protection that Congress provided through the Enlisted Personnel Board procedures in the first place. The Government promises that "this never happened." Appellant Br. 15 n.6. But Congress enacted § 357 so that these senior Coast Guard servicemembers did not have to take the Government's word that they

would not be forced to retire without cause. And for good reason: while the Government now says it was not improperly trying to do an end run around § 357's protections limiting grounds for forced retirement, the Coast Guard's contemporaneous statements show otherwise. When the CRSPs were first established, the Coast Guard's Chief of the Office of Military Personnel, Captain Calhoun, explained that "the idea [of CRSP] primarily is to retain the best and productive members of the organization while culling out those members who may be simply receiving a paycheck and not striving for more." Appx110. The Coast Guard explained in its Frequently Asked Questions that the reason it did not use Enlisted Personnel Boards was because the Boards "would have been a time and resource prohibitive process"—the reasoning was not that this was a reduction in force. Appx114. The 2012 CRSP was instructed that it was a "performance and conduct based panel." Appx46; *see also* Appx 63 ("The 2014 CRSP will use a performance and conduct-based methodology …") (emphasis in original). These contemporaneous statements demonstrate a clear contradiction between the Coast Guard's actions and the procedural protections to which Plaintiffs' were entitled. Congress set a high bar of requiring cause for involuntarily retiring enlisted servicemembers with twenty or more years of service. Through CRSP, the Coast Guard skirted those restrictions. The Government's amorphous reading of "reduction in force" is nonsensical and should be rejected.

## CONCLUSION

For the reasons stated above, the Plaintiffs respectfully request that the Court affirm the judgment of the Court of Federal Claims.

March 29, 2023

Respectfully submitted,

*/s/ Nathan S. Mammen*

Nathan S. Mammen
Grace C. Brier
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 839-5000

Counsel for Plaintiffs-Appellees

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7). According to the word processing system used to prepare this document, the brief contains 7,983 words.

*/s/ Nathan S. Mammen*